## UNITED STATES v. ROSSLER.
### No. 307.

Circuit Court of Appeals, Second Circuit.

July 6, 1944.

464

Joseph L. Petrunick, of Syracuse, N. Y., for appellant.

Robert M. Hitchcock and D. E. Balch, Sp. Assts. to Atty. Gen., and Irving J. Higbee, U. S. Atty., and B. Fitch Tompkins, Asst. U. S. Atty., both of Syracuse, N. Y., for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Rossler appeals from a judgment of the district court cancelling his certificate of naturalization upon a complaint for fraud in its procurement, on the ground that he was at the time not "attached to the principles of the Constitution of the United States," and that he did not "in good faith, intend to renounce * * * all allegiance and fidelity to the German Reich" of which he was a subject. The following

are the crucial findings made by the judge after a trial. The "German-American Bund" was "a German militant 'Fifth Column' organization in the United States, antagonistic to the democratic form of government and to the Constitution and laws of the United States." The "principles of German National Socialism are the antithesis in all respects to the principles of democracy and to the Constitution and laws of the United States." Rossler joined the Syracuse unit of the "Bund" "early in the Fall of 1938"; and for "from five to eight months beginning some time in 1939 and ending in January, 1940" he "acted as leader" of that unit. Finally, "as evidenced by his membership in the Bund, his leadership and activity therein, his adoption of the aims and purposes thereof, together with the beliefs and actions possessed, expounded and performed by him," he did not really renounce his allegiance, or mean to defend the United States "against all enemies, foreign and domestic." Upon these findings the judge concluded that Rossler had fraudulently procured his certificate, and that it should be cancelled.

The evidence in support of the findings was in substance as follows. Rossler was born in Germany of German parents in 1907, came to this country in 1926, and joined his brother who lived in Syracuse. He went back in November, 1928, married a German in 1930, and came again to this country on May 18, of that year. He was a wood carver by trade, got a job in Colorado Springs soon after he returned, and brought his wife over to join him. He swore that he had never formed any political connection with the Nazi party during his stay in Germany, and the only evidence even remotely bearing upon his beliefs or national attachments before he was naturalized was the testimony of three acquaintances in Colorado Springs. Two of these—husband and wife—swore that they had heard Rossler and his wife in "argument": he "holding up for Hitler, and she didn't like it. * * * Rossler said that Hitler was the man for Germany and his wife said he was not. Mrs. Rossler did not like Hitler; she preferred Hindenburg. Rossler said Hindenburg was "too old." Another acquaintance, Kuhlman, quoted Rossler as saying that he had been a Nazi in Germany (presumably before 1926): "they went around and marched and trained; * * * the new party was good and this youth organization would

make a different rule in Germany." Rossler had frequently argued with his father-in-law, who was a Liberal Socialist, while Rossler was a Nazi; Rossler thought that party the "best," and hoped that it "would win out."

Even were the test not so severe as that which the Supreme Court has set in Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796, and Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, it would be clearly unwarranted to assume from such expressions as these that, when Rossler took his oath in December, 1935, he wished those political principles to prevail in the United States, which he favored for Germany. And, indeed, even if he preferred an authoritarian system here, he might not have wished to have it imposed by violent means, but have been content to go along as a law abiding American citizen. That attachment to the principles of the Constitution which the law exacts at naturalization is not addressed to the heart; it demands no affection for, or even approval of, a democratic system of government; but merely an acceptance of the fundamental political habits and attitudes which here prevail, and a willingness to obey the laws which may result from them. Naturalization expresses the alien's voluntary initiation into the new society of his choice; his change of allegiance may be dictated by any purpose, however personal and selfish, so be it it is not inconsistent with a willingness to throw in his lot with that society and make its fate his own. Patriotism is not a condition of naturalization, any more than it is of continued native citizenship.

If that be true, there remains nothing in the record to support the judgment except that Rossler joined the "Bund" "early in the Fall of 1938." That organization was certainly formed to stimulate anti-democratic sentiments, and agitate against this, as well as all other, democratic states; and it is difficult to resist the conclusion that membership in it not only implied a conviction of the superiority of an authoritarian state, with all political power confined to "uncontaminated Aryan" stocks—whatever that may have meant—but active agitation forcibly to substitute such a system. Perhaps, even adherence to that system may not be enough to prove fraud in an action like this; but it is not necessary to go so far here, for it does not in the least follow, because Rossler was willing to join the "Bund" "early in the Fall of 1938," that he would have been willing to do so nearly three years earlier. Much had happened in that time which might have changed into a fanatical zealot a person who had originally had no more than a preference for the establishment of a Nazi state. "Early in the Fall of 1938" was the time of Hitler's diplomatic triumph which led to the occupation of Czecho-Slovakia. Already the Reich had seized the palatinate and overrun Austria; it had shown a power and ruthlessness which seemed resistless; Europe was aghast, and seemed as prostrate as events almost proved that in fact it was. The moment may well have seemed to Rossler an occasion propitious for an agitation, looking towards a forcible change of our political system, which could not have succeeded before; and without some such prospect of success it might never have occurred to him to betray his new allegiance. If the truth of his oath were to be tested by his affections, it might be rational to infer that he had loved his new country as little in 1935 as he did in 1938; but, since affections are not the test, but only the honesty of his declaration that he was ready to abide by the laws of the United States, his joining the "Bund" three years after he was naturalized was certainly insufficient evidence.

For the foregoing reasons the judgment must be reversed and the complaint dismissed regardless of the ruling in Baumgartner v. United States, supra, 322 U.S. 665, 64 S.Ct. 1240. As we are not entirely sure of the scope of that decision we say nothing as to whether, if Rossler had already joined the "Bund" before he was naturalized, his certificate should have been cancelled.

Judgment reversed; complaint dismissed.