## UNITED STATES v. SOTZEK et al.
### No. 420.

Circuit Court of Appeals, Second Circuit.
Aug. 15, 1944.

James B. M. McNally, U. S. Atty., of New York City (Louis Bender, Asst. U. S. Atty., of New York City, and George Jaffin, Sp. Atty., Department of Justice, of Washington, D. C., of counsel), for plaintiff-appellant.

David S. Kumble, of New York City, for defendants-appellants.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

Twenty actions to revoke orders admitting aliens to citizenship and to cancel certificates of citizenship issued thereunder were brought by the United States in the District Court for the Southern District of New York, and consolidated for the purpose of trial. A judgment was entered in favor of the plaintiff in each of eleven cases and in favor of the defendants in each of nine cases. United States v. Kuhn, D. C., 49 F.Supp. 407. See also United States v. Sotzek, D.C., 53 F.Supp. 708. Appeals have been taken by the defendants Sotzek, Von Holt, Koehler and Wunschel and by the United States in the case of Finders. The government has withdrawn its appeal from the judgment in the Finders case and has confessed error in the judgments against Von Holt and Wunschel.

The actions were commenced under § 338(a) of the Nationality Act of 1940, 8 U.S.C.A. § 738(a), which provides in part that such proceedings may be instituted "on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured." Subsection (e) empowers the court when such cause has been proved to revoke the order admitting the defendant to citizenship and to cancel his certificate.

In their respective petitions for naturalization the appellants swore that they were attached to the principles of the Constitution of the United States and were well disposed to the good order and happiness of the United States, as they were required by law to do (Act of June 29, 1906, 34 Stat. 596, reenacted as § 332 of the Nationality Act of 1940, 8 U.S.C.A. § 732), and on the day of their admission to citizenship they swore that they renounced all allegiance to Germany and that they would support and bear true faith to the Constitution and laws of the United States. The government contends and the trial judge found that these oaths were taken falsely or with mental reservations by appellants Sotzek and Koehler and therefore that the orders admitting them to citizenship were fraudulently obtained. The evidence was sufficient to show the following as to each of appellants Sotzek and Koehler.

In the case of Sotzek, the court found that he emigrated from Germany to the United States in 1928, filed his petition for naturalization on September 20, 1935, and was admitted to citizenship on March 2, 1936. Several months later he became a member of the German American Bund in New York and for the next four years took an active part in its affairs, being appointed a member of the Ordnung Dienst, or O. D., a uniformed group of men patterned after the Nazi Storm Troopers in Germany and organized as a military unit of the bund. At meetings which he attended, there were celebrations of the anniversary of Hitler's rise to power and of other events which by the appellant's own admission no American organization would celebrate. He denied, however, that he ever heard National Socialism discussed. In 1940 he was expelled from the German American Bund for "undisciplined conduct," though he says he had previously left the organization. Thereafter he joined the Kyffhaeuser Bund, a group consisting of German veterans of the first World War who worked for the relief of German war prisoners by sending them money and bundles. This organization was dissolved after the attack on Pearl Harbor.

Aside from this evidence of the appellant's membership and activity in the bunds, there was considerable other testimony adduced to show his state of mind with respect to an adherence to principles of government. On the day of his naturalization he asserted, "I am an American, but don't forget that I am a German too." He was quoted as endorsing Hitler's anti-Semitic purge of occupied Europe, and as approving as good for workers the sort of socialist government which Hitler was imposing on Germany. In his own behalf Sotzek denied having done anything inimicable to the welfare of the United States, explained his bund membership on the ground that he had joined for purely social reasons, and asserted that he left the organization when he began to realize that there was something wrong about it. He testified that he opposes the present German government because of its persecution of religious minorities and he recognizes that there is a conflict between the tenets of the German and the American governments. He claimed to value his citizenship highly and asserted a disposition to do anything to retain it, including a willingness to fight for this country against Germany. There was evidence that Sotzek had a commendable record of performance as a tool maker in a factory engaged wholly in the production of war materials.

After analyzing the evidence and making his findings, the trial judge concluded that the government had sustained its case against him and he therefore ordered a revocation of the order of naturalization and a cancellation of the certificate.

In the case of Koehler, the evidence and findings show that in 1934 he became a member of the Friends of New Germany and later of its successor organization, the German American Bund. His petition for naturalization was filed on February 29, 1940, and granted on December 9 of the same year. Since 1923 he had been employed by the publishers of bund newspapers and he admitted having promoted the things which they advocated. In 1939 he registered for military service with the German army as he was required by German law to do, though at the time he was expecting to become an American citizen. He stated that he would not fight against Germany under any circumstances, but he now claims that he was provoked by the district attorney into making such a statement, to which he does not in fact subscribe. His membership in the bund and his registration for German military service he testified were required of him by his employers as a condition of retaining his employment. While according to his testimony he was not a member of the O. D., he did wear its uniform and march in parades

through the streets of New York City; this too he says was necessary to keep his position with the bund newspaper. He did not on the whole, take a very active part in the bund affairs, the judge found, but the court felt that his membership for six years preceding his naturalization and his statements since showed an attitude of at least divided allegiance, and judgment was, accordingly, entered for the United States.

During the pendency of this appeal the Supreme Court decided Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, and the judgments must be reviewed in the light of that decision.

■ The trial court found that "the aims and purposes of the Bund * * * were un-American and subversive" [49 F.Supp. 414], but rightly held that the mere fact of membership would not necessarily be a sufficient ground on which to base a judgment revoking an order admitting an alien to citizenship. The court ruled that such membership taken together with other facts in the individual cases "may have a definite bearing upon the relief sought by the government," and proceeded to consider each of the twenty defendants with respect to his membership together with such "other facts." Thus it is apparent that in the cases of Sotzek and Koehler, as well as in the others, the membership of the appellants in the German American Bund was considered by the judge as a factor relevant to the question whether at the time they were naturalized they committed a fraud upon the naturalization court.

■ In the Baumgartner case the Supreme Court held that evidence of a man's attitude in political matters at a period subsequent to his naturalization does not afford sufficient proof that on the earlier occasion he was committed to those views, and hence a fortiori it is no proof that he had any mental reservation when he renounced allegiance to his native country and swore allegiance to this country. See, United States v. Rossler, 2 Cir., 144 F.2d 463.

■ The fact that appellant Sotzek joined the bund shortly after his naturalization and became a unit leader about two years later is the most damaging evidence against him, but we think that it is insufficient to support the judgment. The court rejected testimony to the effect that on one occasion Sotzek expressed contempt for the American flag, and the other evidence shows merely the sort of talk which is commonly heard uttered by native and naturalized citizens alike, to the effect that this change or that one ought to be made in the government. Such talk does not reveal an unwillingness to abide by the constitution and laws of the country; it is at most the expression of political opinion regarding changes which ought to be made—and the freedom to advocate change is one of our most cherished constitutional rights. Many of Sotzek's remarks, and certain of his actions, may have been imprudent in one so recently naturalized, and it may be thought that they displayed a poor brand of gratitude for the great privilege of having been granted American citizenship; but they fall short of proving clearly and convincingly that when he swore allegiance to this country he fraudulently entertained any mental reservation or otherwise swore falsely. The judgment must be reversed.

The case of the appellant Koehler is a somewhat closer one because of the circumstance that he was a member of the bund for six years prior to his naturalization. Whether this is a sufficient reason to affirm the judgment against him is a question which this court expressly left undecided in United States v. Rossler, supra. The government argues that it is a sufficient reason.

The district court in this case found as a fact that the principles of the German American Bund were incompatible with the philosophy of the Constitution of the United States, yet we cannot believe that that finding is enough to establish fraud on the part of this appellant in accordance with the Supreme Court's decision in Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796, disapproving the method of what it called "proof by imputation." 320 U.S. at page 154, 63 S.Ct. at page 1350, 87 L.Ed. 1796. It is true that there the court held that the government had failed to prove that the Communist party, of which the petitioner was an admitted member, stood for the overthrow of the government by force; and since the whole case against the petitioner rested upon his membership in the organization, this holding would have been enough to dispose of that issue. But the court went further and implied strongly that the principles and objectives of an organization and of its more vocal leaders cannot be imputed to a member of that organization merely because he is a member. The leadership principle on which the bund is based may impose its tenets upon

him, so far as discipline within that order is concerned, and to that extent reduce him to the status of a pawn in a game of power politics; but he is, nevertheless, entitled in the courts of a free country to be treated as an individual who can and does think and act for himself in accordance with his own conscience and to be judged as one of a body of men who are free. In reliance on principles given effect in the Schneiderman case, we hold now that whether or not the German American Bund was opposed to the principles of the Constitution, the fact of Koehler's membership in it does not prove with the requisite certainty that he himself was so opposed that his oath was false or fraudulent when he was admitted to citizenship. If it be evidence of such falsity or fraud at all, it is far less than the clear, convincing and unequivocal evidence required.

Nor did the proof as a whole come up to the needed standard. Koehler testified that his statements of unwillingness to fight against Germany were goaded out of him by the district attorney, and while the trial judge did not make any finding on that point the lack of a finding of disbelief militates against the government, which to that extent has failed to prove its case by clear evidence. So also of his marching in the uniform of the O. D. group, which, like his membership in the bund, was required as a condition of his continued employment. All the evidence of his attitude prior to and at the time of his naturalization when viewed in connection with all the rest of the evidence, as it must be viewed, lacks the certainty needed to show fraud clearly, and we conclude that the evidence in this case was therefore less than enough to show a statutory ground for the revocation of the order admitting him to citizenship and the cancellation of his certificate.

As the government has confessed error in the judgments against Von Holt and Wunschel and those judgments have by previous order already been reversed, we will not discuss those appeals now.

The judgments against Sotzek and Koehler are reversed.

CLARK, Circuit Judge (dissenting in part).

I dissent from the reversal of the judgment as to defendant Koehler and vote to affirm his denaturalization. The subversive character of the Bund—the subject of criminal prosecution in United States v. Keegan, 2 Cir., 141 F.2d 248—was amply proved below, as well stated by the district judge, pages 412-414 of 49 F.Supp.; and hence to justify reversal we must hold "clearly erroneous" the finding that this man, a member of the Bund and its predecessor for six years before his naturalization and thereafter until its dissolution after Pearl Harbor, employed on its paper, attending its meetings and wearing its O. D. uniform even in the streets of New York City, did these acts with knowledge of the Bund's character. Even on this statement, the deduction drawn by the trial court would not seem to me strained; but there was further important evidence bearing upon this knowledge, as stated by the judge, pages 418, 419 of 49 F.Supp. This included Koehler's contributions to the organization, his ownership of stock in the company publishing the official organ of the Bund, his visiting of Bund camps and attendance at meetings where speeches were made by the national leaders, his reading of the Bund newspaper, the presence at his office of many other publications, including Hitler's own newspaper, which it seems incredible—notwithstanding his denials—that he did not read all these years, his distribution and sale of Bund pamphlets and newspapers, and his receipt of copies of Bund commands. He could have remained in ignorance of what was going on only by deliberately shutting his eyes; that this is actually what he tried to do is indeed partially supported by his own excuse that "everything I did was only to keep my job." The trial judge had the benefit of seeing and hearing him. I think the finding justified.