## UNITED STATES v. SIEGEL.
### No. 62.

Circuit Court of Appeals, Second Circuit.
Dec. 10, 1945.

Dennis P. O'Connor and John W. Joy, both of Hartford, Conn., for appellant.

Robert P. Butler, U. S. Atty., of Hartford, Conn., and K. D. Abbott, Sp. Atty., Department of Justice, of Washington, D. C., for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

PER CURIAM.

This action was commenced in January 1944 under section 338 of the Nationality Act of 1940, 8 U.S.C.A. § 738, to set aside a decree of naturalization granted in the same court to Theodore Karl Siegel on May 4, 1938. The defendant was born in Germany in 1898, was educated in German schools and universities and entered the United States through Canada on a non-quota immigration visa in September 1931. The details of his life and activities in the United States are accurately and carefully reviewed in the district court's opinion reported in 59 F.Supp. 183, and need not be here repeated. After a lengthy trial the district court concluded that the defendant's naturalization had been fraudulently and illegally procured by reason of misrepresentations contained in his petition for naturalization dated May 1, 1937 and in his oath of allegiance taken May 4, 1938 because on each of these occasions he did not in fact

intend to renounce allegiance to the German Reich. Judgment was entered on January 12, 1945 revoking his citizenship and cancelling his certificate of naturalization; and he has appealed.

The appellant urges (1) that the statute under which the action was brought is unconstitutional; (2) that letters upon which the government strongly relies to prove its case were illegally seized and should have been suppressed pursuant to a motion made before trial; (3) that a motion to postpone trial was erroneously denied; and (4) that the evidence is not of the "clear, unequivocal and convincing" character required to support a judgment revoking naturalization.

 The first three contentions require but little discussion. Although in Schneiderman v. United States, 320 U.S. 118, at page 124, 63 S.Ct. 1333, 87 L.Ed. 1796, the question of constitutionality was put aside as unnecessary for decision, a reading of the later Baumgartner case, Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525, convinces us, as it did the district judge, that the statutory authorization to revoke a judgment of naturalization procured by fraud is valid, whether the fraud be intrinsic or extrinsic. As to the taking of the letters, it will suffice to say that the evidence amply supports the court's finding that they were turned over to the agents with Siegel's voluntary consent. See United States v. Tempone, 2 Cir., 136 F.2d 538. Denial of the requested postponement of trial was a matter within the court's discretion and was well handled. No abuse of discretion is shown. We pass therefore to the sufficiency of the evidence of fraud.

 In a case of this character the evidence must be "clear, unequivocal and convincing"; it was found to be so by the district judge. This does not, however, relieve an appellate court from the task of examining the foundation of the findings and determining for itself whether the exacting standard of proof has been satisfied. Baumgartner v. United States, 322 U.S. 665, 670, 64 S.Ct. 1240, 88 L.Ed. 1525. In that case the proof was held insufficient; the falsity of the defendant's oath had to be inferred from evidence of what he had said and done long after he became a naturalized citizen. This was likewise true in United States v. Rossler, 2 Cir., 144 F.2d 463, where this court reversed a judgment of denaturalization and dismissed the complaint. In the case at bar, however, Siegel's own letters written at the very time he was applying for citizenship, as well as afterwards, disclose his subjective attitude toward Germany; if war should come about between the United States and Germany, he felt that he would still belong to his "homeland." * Judge Smith has discussed the evidence and the applicable legal principles so adequately that we should be content to affirm on his opinion. Our own ex-

* The following excerpts are from a letter to his wife dated April 10, 1938:

"Therefore, and because we are just at this theme, I want to continue explaining my attitude, in case that someday the unhappy ghost called war should become true.

"Should you have ever assumed that in such a misfortune of my fatherland I would sit quietly in Storrs or anywhere else and run fearsomely to the radio every 15 minutes in order to snatch up the news which would come or would not come there; then to be sure, dearest, you would have been in a serious error up to now. * * *

"Quite equally: whether an American or non-American,—in a war I belong in my homeland and with my people who consist not only of you and my child, but of my relatives, my friends and my German brothers.

"And for the rest of my whole life I would be ashamed to death if I should not seek the most distant possibility and use it in order to arrive in my homeland in the case of a war. There is my place and not possibly in Storrs or the U. S. A. * * *

"I would no longer have the courage to look one of my brothers or sisters, one of my friends in the eye if I should shirk then. * * *

"Naturally I shall not seek every opportunity to die a glorious death and to leave you behind as a widow under all circumstances, but there are really enough other activities where I can make myself useful for my own people and my fatherland. But even if I should have to pay with my life, my wife and my child would really at least have the memory of me 'for what' their husband and father died. * * *

"For you too there will be activities in a war whose fulfillment will enthuse you with joy and zeal.

"And if I now become a citizen, that must give rise to no false suppositions. (1) That does not mean much indeed. (2) It is in our interest at the moment. (3) It puts freedom of action into my

amination of the record has satisfied us that the plaintiff's proof meets the required standard.

Judgment affirmed.

own hands. But by no means does it mean the break with my homeland and my nation. And (4) I am doing it essentially on your account."