**UNITED STATES v. HAUCK et al.**

No. 31.

Circuit Court of Appeals, Second Circuit.
April 2, 1946.

George C. Dix, of New York City, for appellants Hauck and Weiss.

Edwin A. Livingston, of New York City, for appellants Bregler, Markmann and Flick.

T. Vincent Quinn, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for appellee.

Before SWAN, CHASE and CLARK, Circuit Judges.

SWAN, Circuit Judge.

Between October 1942 and March 1943 the United States filed, pursuant to 8 U.S. C.A. § 738(a), a separate complaint against each of the five appellants and three other naturalized citizens to cancel his certificate of naturalization on the ground of fraud in its procurement. In substance the charge was that the defendant's overriding loyalty to Germany rendered false his oath of allegiance to the United States and his renunciation of allegiance to Germany. In each case the basis for the charge was the defendant's membership and activity in the German-American Bund or its predecessor organizations. The actions were consolidated (United States v. Bregler, D.C., 3 F.R.D. 378) for the trial of the one common issue, namely, the purposes, character and practices of the Bund and its predecessors. After the trial of this common issue evidence as to the disloyal reservation of each individual defendant was admitted only as against the individual concerned. The

plaintiff first called each defendant as a witness under Federal Rules of Civil Procedure, Rule 43(b), 28 U.S.C.A. following section 723c, and interrogated him at great length with respect to his activities as a Bund member and his state of mind when he took his oath of allegiance. This was followed by testimony of other witnesses as to what the defendant had done or said. The cases were tried without a jury. In each case the judge made detailed findings of fact, concluded that the defendant's representations in his petition for citizenship and in his oath of allegiance were false, and gave judgment against him. The opinion below is reported as United States v. Bregler, D.C., 55 F.Supp. 837. Five of the defendants have appealed.

With respect to the appellant Bregler, the government's brief states that reversal of the judgment in his case will not be opposed, due to the fact that his naturalization certificate was issued several years before he joined the Bund. See Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 125; United States v. Rossler, 2 Cir., 144 F.2d 463. Therefore, no discussion of Bregler's appeal is required.

The other appellants urge numerous errors, contending that the complaints were insufficient, the actions were barred by the statute of limitations, the cases were improperly consolidated, incompetent evidence was admitted, the trial was unfair, and the United States did not prove its case by the clear, unequivocal and convincing evidence required in proceedings of this character.

 Several of these contentions are so clearly without merit that they may be disposed of summarily. The contention that the complaints were insufficient because a judgment of naturalization can be set aside only for extrinsic fraud is contrary to our recent decision in United States v. Siegel, 2 Cir., 152 F.2d 614. Reliance on 28 U.S.C.A. § 791 as the applicable statute of limitations is a hopeless clutching at straws; that statute is completely irrelevant. United States v. Brass, D.C., 37 F.Supp. 698; see United States v. Ali, D.C., 7 F.2d 728. There was no abuse of discretion in ordering consolidation of the cases on the common issue relating to the Bund and its predecessor organizations. See United States v. Knauer, 7 Cir., 149 F.2d 519, certiorari granted 66 S.Ct. 265. Nor is there any merit in the argument that the appellants' constitutional rights of freedom of speech and of assembly render inadmissible evidence concerning the consolidated issue and their membership and activities in the Bund. Such evidence was competent as bearing on the state of mind of the respective appellants when they took the oath of allegiance. Appellant Hauck objects also to the order growing out of the pretrial conference which allowed the United States to offer photostats instead of originals where it was inconvenient to obtain the originals. Since the affidavit filed by counsel for Hauck on February 28, 1944, questioned only the accuracy of the translations, and his request for adjournment, made on March 2, 1944, raised no other point, he is not in a position to urge on this appeal that error was committed in admitting the copies without production of the originals.

With respect to the claim that the trial was unfair we are constrained to note that the record shows numerous instances where the impartiality and decorum which ought to characterize a trial were distinctly lacking. Indeed, in conducting the examination of witnesses the court frequently evidenced such partisanship that had there been a jury, reversal would be required on that ground alone. Since there was no jury, we shall examine the record as to each defendant to see whether the finding of fraud in the taking of his oath of allegiance was adequately proven and whether the trial was fairly conducted as to him.

 The evidence offered by the government falls into two categories: one relating to the purposes and activities of the German-American Bund and its predecessor groups, and the other touching the specific conduct and mental attitude of each of the several defendants. A vast mass of evidence is of the first sort. It begins with testimony as to the organization in 1924 in Chicago of a group called the Society

of Teutonia [1] and follows down through various changes of the society's name to the dissolution of the German-American Bund in January 1942. The four defendants, whose appeals are to be discussed, became members of one of the local units of the Bund at various dates between October 1933 and July 1935. Whether it was an abuse of discretion to permit the government to go at such inordinate length into· evidence concerning the Bund, during periods long before any of the appellants joined and long after three of them, (Hauck Markmann and Flick) had ceased to be members, is perhaps questionable in view of Keegan v. United States, 325 U.S. 478, 480, 65 S.Ct. 1203.[2] Compare United States v. Knauer, 7 Cir., 149 F.2d 519, 520, cert. granted, Dec. 10, 1945. But the point is unnecessary to our decision. A resume of the testimony concerning the Bund appears in the District Court's opinion and will not be repeated. The judge concluded that the Bund was "un-American and subversive" and that "any person subscribing to or believing in the doctrines of National Socialism and the doctrines of the Bund could not, at the time of the taking of the oath of citizenship, have subscribed to such oath and pledge of allegiance in good faith." 55 F.Supp. at page 840. But the conclusion that an applicant for citizenship who subscribed to the doctrines of the Bund necessarily swore falsely in taking his oath of allegiance cannot be accepted in the light of the Supreme Court's opinions in Schneiderman v. United States,· 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796 and Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525, and this court's decisions in United States v. Rossler, 2 Cir., 144 F.2d 463 and United States v. Sotzek, 2 Cir., 144 F.2d 576.[3] The principles of a political organization and the utterances of its more vocal members cannot be imputed to another merely because of his membership. Schneiderman case,

supra, 320 U.S. 118 at page 154, 63 S.Ct. 1333, 87 L.Ed. 1796. As the Baumgartner opinion pointed out at page 674, of 322 U.S. 665, 64 S.Ct. 1245, 88 L.Ed. 1525, "the expression of views which may collide with cherished American ideals does not necessarily prove want of devotion to the Nation." And as this court held in United States v. Sotzek, a defendant's membership in the Bund for six years prior to taking his oath of allegiance does not prove with the requisite certainty that he himself was so opposed to the principles of the Constitution that his oath was false or fraudulent. Consequently evidence falling within the second category above mentioned, namely, that relating to the personal conduct and utterances of each of the appellants, is of more importance than evidence relating to the Bund in general.

 The district court's opinion reviews the evidence as to each individual defendant. We must also review it, for not only must fraud requisite to denaturalize a citizen have been proved by clear, unequivocal and convincing evidence, but the appellate court must determine for itself "whether that exacting standard of proof had been satisfied." Baumgartner v. United States, supra, 322 U.S. 665 at page 671, 64 S.Ct. 1244, 88 L.Ed. 1525; United States v. Siegel, 2 Cir., 152 F.2d 614.

Appeal of Hauck.

The appellant Henry Hauck was born in Germany in 1894. After attending high school he went to a teacher's seminary. During the first world war he served as a lieutenant in the German army. After the war he taught music, physical training and general subjects in the public schools until 1928, when he came to the United States. Previously, in 1921, he had married in Germany. After his arrival in this country in May 1928, he worked in a laundry, in a factory, in a bakery and as a shipping clerk for

---

[1] In 1926 the name was changed to National Socialistic Society of Teutonia, in 1932 to Friends of the Hitler Movement, in 1933 (after Hitler became Chancellor) to Friends of New Germany, in 1936 to German-American Bund. We shall use the term Bund to designate any of these names without differentiation.

[2] Appellants' brief states that the same evidence concerning the Bund was used in the Keegan case as in the case at bar.

[3] Our decision in the Sotzek case was handed down after the district court's opinion in the case at bar.

a market. In 1936 he leased a restaurant concession at a Bund camp on Long Island, Camp Siegfried, which he operated until October 1938. In February 1939 he purchased a diner-restaurant which he and his wife have continued to operate ever since. His neighbors testified to his good character and steady habits.

Hauck filed his declaration of intention to become a citizen in May 1929, petitioned for naturalization on June 3, 1935 and took the oath of allegiance on October 3, 1935. He joined the Jamaica Unit of the Bund in July 1935. He testified that his reason for joining was because the Bund was fighting the boycott of German-Americans in New York City and was trying to promote a better understanding between the United States and the German Reich. He thought National Socialism had improved conditions in Germany and was a good thing for the German nation.

In the summer and fall of 1935 Hauck attended the Rednerschule conducted by the Bund and in November 1935 was made leader of the Jamaica Unit. He made many speeches on behalf of the Bund and presided at meetings which celebrated Hitler's birthday and other German festivals. He resigned as leader of the Jamaica Unit in 1935 but remained as manager of Camp Siegfried for about another two years during which time he continued speaking and recruiting members for the Bund. The government produced no evidence that his speeches were critical of America or of our way of life or of the Constitution. In a speech made on Hitler's birthday, April 20, 1936 Hauck said "It is an inner joy and satisfaction for Ausland Germans that we are again a Volk." "In the future we must strive and look up to the Fuehrer; therefore be united, united like our brothers in the old Homeland." After brow-beating the witness about this speech, the judge said: "You will agree, yourself, that if you made that speech it would be contrary to the oath that you took"; and the witness replied, "I was a fool, yes—a complete fool." Apparently the judge thought that conclusive, for when Hauck's counsel suggested that the witness is entitled to explain, the judge remarked, "Oh, sure, he can explain anything he wants to, but there are the words." If this case had been tried in 1936, we cannot believe that anyone would seriously have contended that those words justified an inference that Hauck's oath of allegiance taken six months before was falsely sworn. As a native-born German it was not unnatural that he should take satisfaction in the supposed unity of the German nation and should look up to the leader who had brought it about. Three years before the start of the war there were native-born American citizens ready to express admiration for Hitler without being thought disloyal.

There is a great deal of testimony as to Hauck's belief in the "leadership principle," his delight in the slogan "Ein Reich, Ein Volk, Ein Fuehrer;" his reading of "Mein Kampf" and his attendance at German movies. It all adds up to the portrait of a native-born German who was proud of the resurgence of the German nation, but is far short of clear proof that he took his oath with a mental reservation. Two findings of fact however, deserve specific mention. Finding xxxiii is that Hauck "showed his disregard for the American flag as compared with the Swastika, referring to the former as 'a dirty handkerchief.'" This finding was flatly denied by Hauck and by Hauck's nephew who served in the U. S. Marines. Horn had a strong prejudice against Hauck for he testified that "every time I had a job I got fired through Mr. Hauck." He also had a motive for favoring the government for he had himself been a member of the Bund and his petition for naturalization, filed in 1941 or 1942, was still pending. His testimony as a whole is most unimpressive. On cross-examination he was several times obliged to change some story he had told on direct and he was frequently contradicted by other witnesses.

Finding xxxiv is to the effect that Hauck "evidenced his insincerity in acquiring American citizenship in advising a would-be declarant how to evade committing himself to willingness to fight against Germany." This finding rests on the story of an "agent provocateur" named Brandt who interviewed Hauck in 1938 with the apparent purpose of extracting damaging admissions from him. Some indication of

the character of the witness is shown by his testimony that he was ordered to join the Bund and so took the Bund oath but "did not mean" it. He told the following story of his conversation with Hauck: "Speaking of citizenship I asked Mr. Hauck outright what I would do to become an American citizen, and particularly in view of the fact that one is a Nazi, or thinks along Nazi lines. Well, Mr. Hauck said the following: 'If the Judge asks you in the event of war between the United States and Germany, would you fight against Germany, well if you say I will fight against Germany, as a Nazi you lie, and if you say you won't fight, you will not get the citizenship. Therefore you tell the Judge, I will do my duty and let the Judge figure it out for him himself.'"

Hauck's version of the incident is different, although it is difficult to know just what his version was because of the constant interjection of questions by the court. But even accepting Brandt's version, this conversation seems to us insufficient to justify an inference that Hauck perjured himself two years before when he took the oath. Hauck believed Brandt a Nazi and was naively impressed by him: "He was very swell, it was something quite different from people I have known before and he spoke with a real German officer's voice." He says that he told Brandt that being a Nazi he would not be entitled to citizenship. However that may be, there is no evidence that the matters as to which he gave Brandt hypothetical advice ever crossed his mind when he took his oath. On the whole record we are not satisfied that the exacting standard of proof which is required to cancel naturalization for a fraudulent oath has been met.

Appeal of Weiss.

Hugo Weiss was born in Germany in August 1911. He entered the United States for permanent residence at the age of 17 on February 3, 1929. He has resided here ever since and has had steady employment as a butcher. He filed his declaration of intention in March 1933, his petition for naturalization in December 1937 and was admitted to citizenship on April 1, 1938. He became a member of the Astoria unit of the Bund on May 4, 1934 and leader of this unit in January 1940 and of the Brooklyn unit in June 1941. The latter post he retained until after Pearl Harbor. At the trial he had no counsel; and he was in federal custody by virtue of conviction under an indictment charging conspiracy to violate the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 301 et seq.[4]

■■■■■ Although Weiss was a member of the Bund for nearly four years before he became naturalized he did not become a unit leader until nearly two years later. The court found that "Weiss conceived the ultimate purpose of the Bund to be to organize the German-American element into a militant political bloc, which might affiliate with other nationalistic groups to form a political party to vie with the Republican and Democratic Parties, and which, if successful, would adopt the National Socialistic form of government in the United States." Under the Schneiderman case, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796, the advocacy of non-democratic forms of government is not sufficient to prove a mental reservation by one who takes the oath of allegiance, and we see nothing in the other findings of fact or in the evidence to support with the requisite certainty the conclusion that Weiss's oath was falsely taken.

Appeal of Flick.

Karl Flick was born in Germany in 1901 and was married there in 1927. He entered the United States on January 10, 1928; his wife arrived a few months later. He filed his declaration of intention in March 1932 and his petition for final papers in April 1935. He was admitted to citizenship on August 6, 1935. He had joined the Bund about a year before, in May or June of 1934, after hearing speeches condemning the Jewish boycott of German-Americans. Five or six weeks later he became a member of the O. D., and a group leader of the O. D. at some time during 1936. In 1940 he was expelled from the Bund because he

---

[4] His conviction was reversed in June 1945. See Keegan v. United States, 325 U.S. 478, 65 S.Ct. 1203.

had objected to Fritz Kuhn's attempt to obtain control of Camp Siegfried. Flick was not represented by counsel at the trial.

When he was naturalized he was not asked by the examiner whether he would be willing to fight against Germany but he admitted at the trial that had he been asked he would have told the examiner he would not fight against Germans in Germany. In a signed statement given to the F. B. I. in August 1942, Flick stated "I realize that my present position is inconsistent with my oath of allegiance to this country and I realize that I now have a mental reservation as to where my duty lies when I became a citizen I never expected the war or such things * * *. No, I would not like to fight my own kind. I would not go willingly but if I was forced to I would." We are not prepared to hold that these admissions if brought out upon a fair trial would not justify the finding that Flick had a mental reservation which made his oath of allegiance false and fraudulent. But the strong partisanship displayed by the court in examining Flick and the manner in which he was bullied and browbeaten present so clear an instance of an unfair trial that we cannot let the judgment stand.

The court also made a finding that Flick obtained his naturalization illegally in that neither of his naturalization witnesses knew him the required statutory period of five years. The two witnesses so testified but this issue was not raised by the pleadings. In a denaturalization case the plaintiff should be limited to the matters charged in its complaint. Schneiderman v. United States, 320 U.S. 118, 160, 63 S.Ct. 1333, 87 L.Ed. 1796. Assuming F.R.C.P. 15(b) may be applicable to such a case, implied consent to the trial of an issue not raised by the pleadings should not be found where, as here, the defendant was not represented by counsel and his attention was in no way directed to the significance of the testimony on an issue outside the pleadings.

Appeal of Markmann.

Rudolf Markmann was born in Germany in 1905. He entered the United States for permanent residence in January 1927. He filed his declaration of intention to become a citizen in 1928, his petition for citizenship in March 1933 and he was admitted to citizenship on June 21, 1933. Three and a half months later, October 3, 1933, he joined the Bund. He became a group leader of the Astoria unit in January 1934 and two years later he was appointed to the important position of gauleiter for the eastern district. This position he held until he resigned from the Bund in the spring of 1939 after fleeing to Germany immediately following the indictment and arrest of Fritz Kuhn. He returned to the United States in April 1940, but did not thereafter rejoin the Bund.

The district court found that before, at the time of, and after his naturalization Markmann entertained views and beliefs inconsistent with renunciation of allegiance to the Third German Reich and with acceptance of allegiance to the United States. Markmann made a statement in 1941 that he then thought the Bund an un-American organization and that he had resigned because he could not remain a good United States citizen and stay in it, but he testified that he did not entertain this view when he joined the Bund and that he renounced his German allegiance in good faith. He testified also that he registered for military service. Assuming that the evidence would justify a finding that during the years when he was gauleiter for the eastern district his devotion to Germany was stronger than his devotion to his adopted country, the inference that this was likewise true when he took his oath in June of 1933 is highly conjectural. So far as we can discover the record is barren of any evidence that before or near the critical date he did or said anything which would indicate a mental reservation when he took the oath. In the light of the Baumgartner opinion, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525, the judgment against him must be reversed. While the period of relation back was longer in that case we think we must be guided by Justice Frankfurter's emphatic language and hold that the evidence of Markmann's activities after his naturalization fails to prove fraud in his oath according to the exacting standard required in cases of this character.

In the appeals of Bregler, Hauck, Weiss and Markmann the judgments are reversed and the complaints dismissed; in the appeal of Flick the judgment is reversed and the cause remanded for a new trial, if the plaintiff desires a retrial.