**In re Petition for Naturalization of Jorge Vivino Daniel ARBESU.**

No. 20572.

United States District Court, E. D. Louisiana.

May 3, 1972.

William M. Darlington, General Attorney, Nationality, Immigration and Naturalization Service, New Orleans, La., for the United States.

## OPINION GRANTING PETITION FOR NATURALIZATION

CASSIBRY, District Judge:

This matter was heard on the Designated Examiner's recommendation pursuant to Title 8, Section 1446(d) of the United States Code.

The petitioner, a 44 year old Cuban exile, lawfully admitted for permanent residence in the United States on July 28, 1964, filed his petition for naturalization in this court on December 4, 1969. On November 20, 1970 a preliminary examination was conducted pursuant to the provisions of Title 8, United States Code, Section 1446(b), by a Designated Naturalization Examiner of the Immigration and Naturalization Service of the United States Department of Justice. The Examiner thereafter filed with the court a recommendation that the petition for naturalization be granted.

The issue in this case is whether the petitioner here is qualified for naturalization under Section 316(a) of the Immigration and Nationality Act (8 U.S.C. § 1427). This issue arises from the fact of the petitioner's membership in the Cuban exile group known as Alpha 66. The questions presented are: (a) whether petitioner has established attachment to the principles of the Constitution of the United States and favorable disposition to the good order and happiness of the United States during the period required by law—that is, since December 4, 1964; (b) whether petitioner has established that he has a present intention to reside permanently in the United States; and (c) whether petitioner has established that he can take the oath of allegiance to the United States without mental reservation.

At the final hearing held in open court under the provisions of Title 8, United States Code, Section 1447, the

evidence presented revealed that the petitioner joined the Cuban exile group known as Alpha 66 shortly after his arrival in the United States. One of the purposes of this group was to overthrow the Castro regime by armed invasion. It is headquartered in Miami, Florida. Money is collected nation-wide and forwarded to Miami. Although petitioner never took part in any invasion preparations, he did direct his efforts to the collection of funds to support the group.

At one time petitioner became the leader of the New Orleans, Louisiana, Alpha 66 group and he headed a fund drive to collect money for an invasion of Cuba. Petitioner indicates that he is no longer the leader of Alpha 66 in New Orleans, but he would still contribute money to the group provided such contributions would not be detrimental to the interests of the United States.

The evidence shows that the petitioner believes in the principles of the Constitution of the United States and that he would never take part in any activities which might prove to be an embarrassment to the United States. Although petitioner realizes that he will lose his Cuban citizenship upon gaining American citizenship he is still prepared to take the oath of allegiance to the United States as required by Title 8, United States Code, Section 1448, in good faith. Petitioner intends to reside permanently in the United States.

A personal investigation conducted by the Immigration and Naturalization Service as authorized by Section 335(a) of the Immigration and Nationality Act (8 U.S.C. § 1446(a)) reveals that the petitioner enjoys a good reputation in the community.

Under Section 316(a)(3) of the Immigration and Nationality Act (8 U.S.C. § 1427(a)(3), the petitioner must establish that he is and has been a person of good moral character, attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States.

Under Section 337 of that Act (8 U.S.C. § 1448) and Section 337.1 of Title 8 of the Code of Federal Regulations the petitioner, in order to be admitted to citizenship, must be willing to take an oath of allegiance to the United States without any mental reservation. Judicial construction of this requirement has held that ". . . the alien must intend to reside permanently in the United States before he shall be entitled to naturalization." Ozawa v. United States, 260 U.S. 178, 191, 43 S.Ct. 65, 66, 67 L. Ed. 199 (1922); United States v. Ellis, 185 F. 546 (C.C.E.D.La.1911); United States v. Gallucci, 54 F.Supp. 964 (D.C. Mass.1944).

The requirement of attachment to the principles of the Constitution of the United States and favorable disposition to the good order and happiness of the United States has been a statutory requirement ever since the earliest naturalization statute was enacted but the terms "attachment" and "favorable disposition" have never been precisely defined. In an early case, it was held that the expression "well disposed" refers to the mental attitude of the petitioner towards this country and was intended to exclude from naturalization those applicants whose beliefs are hostile to the form of government as embodied in the Constitution: attachment to the principles of the Constitution, on the other hand, was held to mean attachment to the principles of a free government which are embodied in the Constitution—it implies a depth of conviction which would lead to active support of the principles in question. In re Shanin, 278 F. 739 (D.C.Mass.1922). Later cases have held that attachment to the principles of the Constitution is not addressed to the heart; it demands no affection for, or even approval of a democratic system of government but merely an acceptance of the fundamental political habits and attitudes of this nation with a willingness to obey the laws which may result from them. United States v. Rossler, 144 F.2d 463 (2d Cir. 1944); United States v. Siegel, 59 F.

Supp. 183 (D.C.Conn.1945), aff'd 152 F.2d 614 (2d Cir. 1945), cert. denied 328 U.S. 868, 66 S.Ct. 1361, 90 L.Ed. 1639 (1946).

■ The issue of whether petitioner is attached to the principles of the Constitution and well disposed to the good order and happiness of the United States arises by reason of his recent and active membership in the Cuban exile group, Alpha 66. Alpha 66 received national attention in April of 1970 when a Captain Vincente Mendez led a small "strike force" on an invasion of the Cuban mainland. The evidence shows that petitioner met Mendez in New Orleans several years ago when Mendez visited the local Alpha 66 Chapter but petitioner denied ever being involved in any military preparations of the group. This court finds that Alpha 66 does not fall within the proscription of Section 313 of the Immigration and Nationality Act. (8 U.S.C. § 1424).

Alpha 66 appears to be an ultra-nationalistic group and petitioner, while no longer an active member or leader in the local chapter, has indicated that he would continue to make monetary contributions to the group. Section 101(e) (2) of the Act (8 U.S.C. § 1101(e)(2)) provides that the giving of any money to any organization shall raise a presumption of affiliation with that organization. However, petitioner has also stated that he would never contribute any funds to Alpha 66 should that group's activities constitute any type of threat to the United States.

In a similar case, presented by the same Designated Naturalization Examiner that appeared before the court today, Chief Judge Hiram R. Cancio of the United States District Court for the District of Puerto Rico granted citizenship to a petitioner who had received national publicity for his arrest as a member of the 26th of July movement. It was held in that case that the petitioner's membership in the 26th of July movement (terminating when the petitioner suspected that the membership of the movement contained many Commu-

nists), did not preclude a finding that the petitioner had the requisite attachment to the Constitution and favorable disposition to the good order and happiness of the United States. Matter of Pruna, 286 F.Supp. 861 (D.C.Puerto Rico 1968). Pruna stated that he joined the 26th of July movement because of his love for his native land, and the court did not believe that this kind of activity was in direct conflict with the requirements of attachments and favorable disposition.

■■ It has been held that the test for determining whether a petitioner for naturalization is sincere in his profession of attachment and favorable disposition requires ascertainment of his state of mind which can be fathomed only by the credibility of what he says and the reflection of his inner views by his outward conduct. Petition of Sittler, 197 F.Supp. 278 (D.C.N.Y.1961), aff'd 316 F.2d 312 (2d Cir. 1963), cert. denied 376 U.S. 932, 84 S.Ct. 702, 11 L. Ed.2d 652 (1964). Here, the evidence does not show that petitioner's conduct could be said to show lack of the requisite attachment and favorable disposition. The evidence before the court clearly supports a finding that in any possible conflict between the United States and Cuba the petitioner's loyalty would lie with the United States. Petitioner's wife is now a United States citizen and he has made his permanent home in this country. As was held in United States v. Gallucci, supra, the law does not require a person to renounce all sentimental fondness for his native land. However, while the petitioner obviously is fond of the land of his birth, there is no doubt that the evidence establishes that his loyalty is with the United States.

Therefore I find:

(a) That the petitioner's beliefs and activities in relation to Alpha 66 are not inconsistent with attachment to the principles of the Constitution and favorable to the good order and happiness of the United States;

(b) That petitioner has established that during the period required by law he has been attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States;

(c) That petitioner has established that he has a present intention to reside permanently in the United States;

(d) That the petitioner can take the full oath of allegiance to the United States without mental reservation.