BRIDGES ET AL. *v.* UNITED STATES.

No. 548.   Argued May 4, 1953.—Decided June 15, 1953.

*Telford Taylor* argued the cause for petitioners. With him on the brief were *Norman Leonard* and *John P. Frank.*

*John F. Davis* argued the cause for the United States. With him on the brief were *Acting Solicitor General Stern, Beatrice Rosenberg, Carl H. Imlay* and *John R. Wilkins.*

MR. JUSTICE BURTON delivered the opinion of the Court.

In this proceeding we are limited to the consideration of the following questions: (1) is it barred by the statute of limitations and, if not, (2) is it barred by the principles of *res judicata,* or estoppel, or the Due Process Clause of

the Fifth Amendment? For the reasons hereafter stated, we hold that it is barred by the statute of limitations. We do not reach or discuss the second question.

The issues raised by the first question are:

1. Whether the Wartime Suspension of Limitations Act [1] has suspended the running of the general three-year statute of limitations [2] in relation to the offenses charged in—

> Count I, under the general conspiracy statute; [3]
>
> Count II, under § 346 (a)(1) of the Nationality Act of 1940; [4] or
>
> Count III, under § 346 (a)(5) of the Nationality Act of 1940; [5] and

2. Whether the saving clause in § 21 of the Act of June 25, 1948, which enacted the present Criminal Code into law,[6] continued in effect the special five-year statute of limitations of § 346 (g) of the Nationality Act of 1940 [7] in relation to violations of § 346 (a) of that Act.

For the reasons set forth, we reach a negative conclusion on each of the above issues.

Petitioner Harry Bridges entered the United States in 1920 as an immigrant seaman from Australia. Subsequently, he defeated two attempts of the United States to deport him because of his alleged Communist Party membership or affiliation. The second such attempt

---

[1] 18 U. S. C. (Supp. V) § 3287.

[2] 18 U. S. C. (Supp. V) § 3282.

[3] § 37 of the Criminal Code, 35 Stat. 1096, 18 U. S. C. § 88, now 18 U. S. C. (Supp. V) § 371.

[4] 54 Stat. 1163, 8 U. S. C. § 746 (a)(1), now 18 U. S. C. (Supp. V) § 1015 (a).

[5] 54 Stat. 1164, 8 U. S. C. § 746 (a)(5), now 18 U. S. C. (Supp. V) § 1425.

[6] 62 Stat. 862.

[7] 54 Stat. 1167, 8 U. S. C. § 746 (g).

culminated June 18, 1945, in *Bridges* v. *Wixon*, 326 U. S. 135.

June 23, 1945, he applied, in the San Francisco office of the Immigration and Naturalization Service, for a Certificate of Arrival and a Preliminary Form for Petition for Naturalization. August 8, he appeared, with petitioners Schmidt and Robertson, before an examiner for a preliminary examination. Each of the three testified that Bridges was not a member of the Communist Party.

September 17, 1945, Bridges appeared in the Superior Court in San Francisco for the naturalization hearing. Schmidt and Robertson testified that they had known Bridges for five years or longer, that he was a resident of the United States during that time and that they vouched for his loyalty to the United States. Bridges gave the following answers under oath:

> "Q. Do you now, or have you ever, belonged to any organization that advocated the overthrow of the government by force or violence?
> "A. No.
> "Q. Do you now, or have you ever, belonged to the Communist Party in the United States?
> "A. I have not, I do not."

He was then admitted to citizenship.

May 25, 1949, more than three years later, a grand jury in the United States District Court for the Northern District of California returned the present indictment in three counts.

Count I charges the three petitioners with a conspiracy to defraud the United States by impairing, obstructing and defeating the proper administration of its naturalization laws by having Bridges fraudulently petition for and obtain naturalization by falsely and fraudulently stating to the naturalization court that he had never belonged to the Communist Party in the United States, and that

such statement was known at all times by each of the petitioners to be false and fraudulent. The appearance and testimony of the petitioners in the naturalization proceeding were alleged as the overt acts in the conspiracy.

That count is laid under the following general conspiracy statute:

> "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than ten thousand dollars, or imprisoned not more than two years, or both." § 37 of the old Criminal Code, 35 Stat. 1096, 18 U. S. C. § 88, now 18 U. S. C. (Supp. V) § 371.

Count II charges Bridges with wilfully and knowingly making a false statement under oath in the naturalization proceeding when he testified that he was not and had not been a member of the Communist Party. Count II is laid under § 346 (a)(1) of the Nationality Act of 1940, 54 Stat. 1163, 8 U. S. C. § 746 (a)(1), which makes it a felony for any person—

> "Knowingly to make a false statement under oath, either orally or in writing, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization or citizenship." [8]

---

[8] Section 346 (a) was repealed by § 21 of the Act of June 25, 1948, 62 Stat. 862, 868. Simultaneously, § 346 (a)(1) was substantially reenacted in 18 U. S. C. (Supp. V) § 1015 (a). For the effect, if any, of the saving clause in § 21 upon the statute of limitations relating to § 346 (a), see pp. 224–227, *infra*.

Count III charges Schmidt and Robertson with wilfully and knowingly aiding Bridges, who was not entitled thereto, to obtain a Certificate of Naturalization which was to be procured by false and fraudulent statements. It avers that they knew that Bridges was a member of the Communist Party and that he had made false and fraudulent representations in the naturalization proceeding. Count III is laid under § 346 (a)(5) of the Nationality Act of 1940, 54 Stat. 1164, 8 U. S. C. § 746 (a)(5), which makes it a felony—

> "To encourage, aid, advise, or assist any person not entitled thereto to obtain, accept, or receive any certificate of arrival, declaration of intention, certificate of naturalization, or certificate of citizenship, or other documentary evidence of naturalization or of citizenship—
>
> "a. Knowing the same to have been procured by fraud; . . . ." [9]

Petitioners each moved to dismiss the indictment on the ground, *inter alia,* that each count was barred by the statute of limitations. The motions were denied. 86 F. Supp. 922. The trial resulted in a jury verdict of guilty on each count. Bridges received concurrent sentences of imprisonment for two years on Count I and five years on Count II. The other petitioners each received concurrent sentences of imprisonment for two years on each of Counts I and III. The Court of Appeals affirmed. 199 F. 2d 811. Rehearing *en banc* was denied. 201 F. 2d 254. Because of an indicated conflict between that decision and part of the decision in *Marzani* v. *United States,* 83 U. S. App. D. C. 78, 168 F. 2d 133, affirmed

---

[9] See note 8, *supra,* as to repeal of § 346 (a). Simultaneously, § 346 (a)(5) was substantially reenacted in 18 U. S. C. (Supp. V) § 1425.

by an equally divided Court, 335 U. S. 895, 336 U. S. 922, as well as its conflict in part with *United States* v. *Obermeier*, 186 F. 2d 243 (C. A. 2d Cir.), and because of the importance of the issues, we granted certiorari, 345 U. S. 904.[10]

The acts charged occurred in 1945. Accordingly, unless the general three-year statute of limitations is suspended or superseded, the indictment, found in 1949, was out of time and must be dismissed.[11]

I. *The running of the general three-year statute of limitations was not suspended by the Wartime Suspension of Limitations Act in relation to the offenses charged in any of the counts.*

A. The suspension prescribed by the Wartime Suspension of Limitations Act applies to offenses involving the defrauding of the United States or any agency thereof, whether by conspiracy or not, and in any manner, but only where the fraud is of a pecuniary nature or at least of a nature concerning property.

The Wartime Suspension of Limitations Act creates an exception to a long-standing congressional "policy of re-

---

[10] The grant was limited to questions 1 and 2 presented by the petition for the writ, *viz.:*

"(1) Whether, in view of prior adjudications (including the determination of this Court in *Bridges* v. *Wixon*, 326 U. S. 135), this proceeding is barred, in whole or in part, by the principles of *res judicata*, or estoppel, or the due process clause of the Fifth Amendment.

"(2) Whether this proceeding is barred by the statute of limitations."

[11] "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within three years next after such offense shall have been committed." 18 U. S. C. (Supp. V) § 3282.

pose" that is fundamental to our society and our criminal law. From 1790 to 1876, the general limitation applicable to noncapital offenses was two years and since then it has been three years.[12] In relation to a comparable exception stated in § 1110 (a) as the limitation applicable under the Revenue Act of 1926,[13] Mr. Justice Roberts, speaking for the Court, said:

> "Moreover, the concluding clause of the section, though denominated a proviso, is an excepting clause and therefore to be narrowly construed. *United States* v. *McElvain*, 272 U. S. 633, 639.[14] And as the section has to do with statutory crimes it is to be liberally interpreted in favor of repose, and ought not to be extended by construction to embrace so-called frauds not so denominated by the statutes creating offenses." *United States* v. *Scharton*, 285 U. S. 518, 521–522.

The legislative history of this exception emphasizes the propriety of its conservative interpretation. It indicates a purpose to suspend the general statute of limitations only as to war frauds of a pecuniary nature or of a nature concerning property. It nowhere suggests a purpose to swallow up the three-year limitation to the extent necessary to reach the offenses before us.

---

[12] 1 Stat. 119; R. S. § 1044; 19 Stat. 32–33. The limitation as to treason or other capital offenses was three years from 1790 until it was removed in 1939. 1 Stat. 119; R. S. § 1043; 53 Stat. 1198; 18 U. S. C. (Supp. V) § 3281.

[13] 44 Stat. 114–115, 18 U. S. C. (1925 ed., Supp. V) § 585.

[14] ". . . The purpose of the added proviso [to the general limitation section] was to carve out a special class of cases. It is to be construed strictly, and held to apply only to cases shown to be clearly within its purpose." *United States* v. *McElvain*, 272 U. S. 633, 639.

The present Suspension Act had its origin in the Act of August 24, 1942.[15] See *United States* v. *Smith,* 342 U. S. 225, 226–227. That Act was a wartime measure reviving for World War II substantially the same exception to the general statute of limitations which, from 1921 to 1927, had been directed at the war frauds of World War I.[16]

---

[15] ". . . the running of any existing statute of limitations applicable to offenses involving the defrauding or attempts to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner, and now indictable under any existing statutes, shall be suspended until June 30, 1945, or until such earlier time as the Congress by concurrent resolution, or the President, may designate. . . ." 56 Stat. 747–748.

This was amended in 1944 by the insertion of more specific references to war contracts and to the handling of property under the Surplus Property Act of 1944. 58 Stat. 667 and 781. Since September 1, 1948, 18 U. S. C. (Supp. V) § 3287 has provided that—

"When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress. . . ."

The President proclaimed the termination of hostilities of World War II, December 31, 1946. 3 CFR, 1946 Supp., 77–78.

[16] "SEC. 1044. . . . : *Provided, however,* That in offenses involving the defrauding or attempts to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner, and now indictable under any existing statutes, the period of limitation shall be six years. . . ." 42 Stat. 220, November 17, 1921.

This proviso was eliminated by 45 Stat. 51, December 27, 1927.

218

The Committee Reports show that in 1921 Congress aimed the proviso at the pecuniary frauds growing out of war contracts.[17] Congress was concerned with the exceptional opportunities to defraud the United States that were inherent in its gigantic and hastily organized procurement program. It sought to help safeguard the treasury from such frauds by increasing the time allowed for their discovery and prosecution. In 1942, the reports

[17] In 1921, H. R. Rep. No. 365, 67th Cong., 1st Sess. 1, supporting the bill to enact the proviso, said:

"The Department of Justice has been engaged in the investigation and is now engaged in the investigation of various alleged offenses, consisting largely of frauds against the Government which are claimed to have occurred during the war with Germany and since its conclusion. Many of these alleged offenses grew out of the [contractual] relation of the Government with various persons and corporations engaged in the furnishing of military and naval supplies of various kinds. Many of these transactions require the most minute investigation in order to ascertain the exact facts, and in every case a considerable period must elapse before such facts may be gathered from the files and other sources that the department may know whether prosecutions are justified or not. In many cases months, and perhaps considerable longer periods, will be required for such investigations." See also, 61 Cong. Rec. 7060–7061, 7640.

In 1927, H. R. Rep. No. 16, 70th Cong., 1st Sess. 1, supporting the bill to eliminate the 1921 proviso, said:

"In 1921 the Attorney General represented that he was desirous of having further time to investigate alleged war frauds, and that owing to the nature of the investigations the statute of limitations might run before it would be possible to obtain indictments, and he therefore requested that the period of the statute of limitations applicable to conspiracy to defraud the Government of the United States should be extended from three years to six years. The Congress complied with the request and the limitation was extended from three to six years as to that particular class of offenses.

"The reasons for the above change have ceased to exist; that is, the Department of Justice announced some time ago that it did not propose to attempt any further prosecution of offenses of that character, that is to say, offenses giving rise to the statute." See also, 69 Cong. Rec. 473, 842.

and proceedings demonstrate a like purpose, coupled with a design to readopt the World War I policy.[18]

---

[18] In 1942, S. Rep. No. 1544, 77th Cong., 2d Sess. 1, 2, supporting the suspension of the running of the statute, said:

"The purpose of the proposed legislation is to suspend any existing statutes of limitations applicable to offenses involving the defrauding or attempts to defraud the United States or any agency thereof, for the period of the present war. Contracting for the United States is done through its various agencies, including the departments and independent establishments and Government-owned and Government-controlled corporations, and frauds against all of these agencies are intended to be embraced by the bill.

"During the World War many frauds committed against the Government were not discovered until the 3-year statute of limitations had almost expired, and as stated in the committee report hereinafter referred to, many of the alleged offenses were barred from prosecution. The general criminal statute of limitations (Rev. Stats., sec. 1044) was amended on November 17, 1921, extending the period to 6 years in respect to offenses involving frauds against the United States . . . .

. . . . .

"During normal times the present 3-year statute of limitations may afford the Department of Justice sufficient time to investigate, discover, and gather evidence to prosecute frauds against the Government. The United States, however, is engaged in a gigantic war program. Huge sums of money are being expended for materials and equipment in order to carry on the war successfully. Although steps have been taken to prevent and to prosecute frauds against the Government, it is recognized that in the varied dealings opportunities will no doubt be presented for unscrupulous persons to defraud the Government or some agency. These frauds may be difficult to discover as is often true of this type of offense and many of them may not come to light for some time to come. The law-enforcement branch of the Government is also busily engaged in its many duties, including the enforcement of the espionage, sabotage, and other laws."

A similar statement was made in H. R. Rep. No. 2051, 77th Cong., 2d Sess. 1–2, supporting the same bill, H. R. 6484. See also, 88 Cong. Rec. 6160. This bill, readopting the 1921 policy, was introduced at the suggestion of the Attorney General in lieu of a proposal then pending to suspend the running of the statute of limitations

This interpretation of the scope of the 1942 provision was expressly approved in *Marzani* v. *United States,* 83 U. S. App. D. C. 78–82, 168 F. 2d 133–137.   As to nine counts based upon the amended False Claims Act, the Court of Appeals for the District of Columbia Circuit held that the 1942 Wartime Suspension of Limitations Act did not suspend the three-year statute of limitations. Those counts charged that false statements had been made to government agencies in relation to Communist Party membership, in connection with an application for a position in the government service.   Referring to *United States* v. *Gilliland,* 312 U. S. 86, the Court of Appeals said:

> "Thus, the [Supreme] Court held that defrauding the United States in a pecuniary or financial sense is not a constituent ingredient of offenses under the False Claims Act.
>
> "It necessarily follows, in our view, that the Suspension Act does not apply to offenses under the False Claims Act.   The Supreme Court has clearly said (1) that a statute identical in pertinent part with the Suspension Act does not apply to offenses of which defrauding the United States in a pecuniary way is not an essential ingredient; and (2) that such defrauding of the United States is not an essential ingredient of offenses under the False Claims statute."   83 U. S. App. D. C., at 81, 168 F. 2d, at 136.

Brought here on several issues, including dismissal of the nine counts, that case was twice affirmed, without opinion, by an evenly divided Court.   335 U. S. 895, 336

for every offense punishable under the laws of the United States. Hearings before Subcommittee No. 4 of the House Committee on the Judiciary on H. R. 4916, 77th Cong., 1st Sess. 6, 8, and see 88 Cong. Rec. 4759–4760.

U. S. 922.  See also, *United States* v. *Cohn*, 270 U. S. 339.[19]

As the offenses here charged are those of knowingly making a false statement under oath in a proceeding relating to naturalization (Count II), or of conspiring to have someone do so (Count I), or of aiding someone to obtain a Certificate of Naturalization knowing it to be procured by fraud (Count III), none of them involve the defrauding of the United States in any pecuniary manner or in a manner concerning property.  We accordingly hold that, for that reason, the Wartime Suspension of Limitations Act does not apply to those offenses.

B. A further ground for our conclusion is that this Court already has interpreted the language before us, or similar language in comparable Acts, to mean that the wartime suspension of limitations authorized by Congress is limited strictly to offenses in which defrauding or attempting to defraud the United States is an *essential ingredient of the offense charged.*  Decisions of this Court, made prior to 1942, had so interpreted the earlier legislation that its substantial reenactment, in 1942, carried with it the interpretation above stated.  *United States* v. *Scharton,* 285 U. S. 518; *United States* v. *Mc-Elvain,* 272 U. S. 633; *United States* v. *Noveck,* 271 U. S. 201.  See also, *Braverman* v. *United States,* 317 U. S. 49, 54-55, and *United States* v. *Cohn,* 270 U. S. 339.

---

[19] *Haas* v. *Henkel,* 216 U. S. 462, and *Hammerschmidt* v. *United States,* 265 U. S. 182, are not to the contrary.  The statements there made refer to conspiracies to defraud the United States "in any manner or for any purpose" as used in the second clause of the general conspiracy section.  See § 37 of the old Criminal Code, 35 Stat. 1096, now § 371 of the new Criminal Code, 18 U. S. C. (Supp. V).  See also, *United States* v. *Gilliland,* 312 U. S. 86.  They do not control the interpretation of the provisions in the Wartime Suspension of Limitations Act discussed in this opinion.

The simplest demonstration of this point appears in Count II. The offense there charged is that Bridges knowingly made a false material statement in a naturalization proceeding. In that offense, as in the comparable offense of perjury, fraud is not an essential ingredient. The offense is complete without proof of fraud, although fraud often accompanies it. The above-cited cases show that even though the offense may be committed in a pecuniary transaction involving a financial loss to the Government, that fact, alone, is not enough to suspend the running of the three-year statute of limitations. Under the doctrine of these cases, the suspension does not apply to the offense charged unless, under the statute creating the offense, fraud is an essential ingredient of it. The purpose of the Wartime Suspension of Limitations Act is not that of generally suspending the three-year statute, e. g., in cases of perjury, larceny and like crimes. It seeks to suspend the running of it only where fraud against the Government is an essential ingredient of the crime. In view of the opportunity to commit such frauds in time of war, and in view of the difficulty of their prompt discovery and prosecution, the Government seeks extra time to deal with them. Nothing in § 346 (a)(1) makes fraud an essential ingredient of the offense of making a false material statement under oath in a naturalization proceeding.

Likewise, in Count III, the aiding of someone to commit that offense, in violation of § 346 (a)(5), does not require proof of fraud as an essential ingredient. If, as here, the main offense is complete with the proof of perjury, the suspension does not apply to the charge of aiding in the commission of that offense. The insertion in the indictment of the words "procured by fraud" does not change the offense charged. The embellishment of the indictment does not lengthen the time for prosecution. It is

the statutory definition of the offense that determines whether or not the statute of limitations comes within the Suspension Act.

So it is with Count I. A charge of conspiracy to commit a certain substantive offense is not entitled to a longer statute of limitations than the charge of committing the offense itself. There is no additional time prescribed for indictments for conspiracies as such. The insertion of surplus words in the indictment does not change the nature of the offense charged.

> "The language of the proviso cannot reasonably be read to include all conspiracies as defined by § 37. [The general conspiracy section of the old Criminal Code, now 18 U. S. C. (Supp. V) § 371.] But if the proviso could be construed to include any conspiracies, obviously it would be limited to those to commit the substantive offenses which it covers." *United States* v. *McElvain,* 272 U. S. 633, 639.

The Government contends that the General Conspiracy Act [20] under which Count I is laid comprises two classes of conspiracies: (1) "to commit any offense against the United States" and (2) "to defraud the United States in any manner or for any purpose." It urges that the indictment here charges a conspiracy to defraud the United States under the second clause. It suggests that, under that clause, proof of a specific intent to defraud is an essential ingredient of the offense and thus brings Count I within the Suspension Act. The fallacy in that argument is that, while the indictment may be framed in the language of the second clause, both it and the proof to support it rely solely on the fact of a conspiracy to commit the substantive offenses violating § 346 (a)(1) or

---

[20] § 37 of the old Criminal Code, 35 Stat. 1096, 18 U. S. C. § 88, now 18 U. S. C. (Supp. V) § 371, see p. 213, *supra.*

§ 346 (a) (5) as charged in Counts II and III. Count I actually charges that petitioners conspired to "defraud the United States" only by causing the commission of the identical offenses charged in Counts II and III. The use in Count I of language copied from the second clause of the conspiracy statute merely cloaks a factual charge of conspiring to cause, or knowingly to aid, Bridges to make a false statement under oath in his naturalization proceeding, or to obtain by false statements a Certificate of Naturalization to which he was not entitled.

The Court of Appeals in *Marzani* v. *United States, supra,* was convinced that the Suspension Act did not apply to such offenses, as those here involved, under the False Claims Act, no matter what words descriptive of fraud were added to the indictment, so long as fraud was not an essential ingredient of the offense defined in the statute. Another Court of Appeals arrived at a like conclusion in *United States* v. *Obermeier,* 186 F. 2d 243, 256–257, with respect to offenses under the statute involved in Count II of the instant indictment.

II. *The saving clause in § 21 of the Act of June 25, 1948, does not "save" the special five-year statute of limitations of the Nationality Act of 1940 so as to apply it to the violations of that Act charged in Counts II and III.*

The Government contends, alternatively, that the indictment, which was found May 25, 1949, was timely as to Counts II and III, even if the Suspension Act is not applicable to this indictment. Its alternative contention is that those counts respectively charge violations of § 346 (a) (1) and (5) of the Nationality Act of 1940 which occurred in 1945 and that the indictment for them was found within the special five-year limitation of § 346 (g)

of that Act.[21]   It appears, however, that § 346 (a–h) was expressly repealed, as of September 1, 1948, by § 21 of the Act of June 25, 1948, which enacted the new Criminal Code into law.   Including its controversial saving clause, that repealing section reads as follows:

> "SEC. 21. The sections or parts thereof of the Revised Statutes or Statutes at Large enumerated in the following schedule are hereby repealed.[22]   Any rights or liabilities now existing under such sections or parts thereof shall not be affected by this repeal."   62 Stat. 862.

By such repeal of § 346 (g), the general three-year statute of limitations became applicable.   18 U. S. C. (Supp. V) § 3282.[23]   Three years having expired before the indictment was found, § 3282 bars the instant indictment.   The Government, however, contends that the above-quoted saving clause in § 21 refers not only to substantive liabilities but also to the period during which a crime may be prosecuted and thus includes the special five-year limitation contained in § 346 (g).   This issue was presented to the Court of Appeals in the instant case and was decided against the Government.   199 F. 2d 811, 819–820.   In doing so, the court relied in part upon a like conclusion of the Court of Appeals for the Second Circuit in *United States* v. *Obermeier, supra.*   That case related to an indictment in two counts for knowingly making, in

---

[21] "(g) No person shall be prosecuted, tried, or punished for any crime arising under the provisions of this Act unless the indictment is found or the information is filed within five years next after the commission of such crime."   54 Stat. 1167, 8 U. S. C. § 746 (g).

[22] In that schedule of repealed sections, at 62 Stat. 868, are §§ 346 (a–h), (l), and 347 of the Nationality Act of 1940, also identified as from Chapter 876, 54 Stat. 1163–1168, approved October 14, 1940.

[23] See note 11, *supra.*

1945, in a naturalization proceeding, as here, false statements under oath in relation to membership in the Communist Party. The review of legislative materials and court decisions made there need not be repeated here in reaching the same result—that the saving clause in § 21 did not keep the special five-year limitation alive after September 1, 1948.[24]

The purpose of Congress to substitute the general three-year limitation in place of the special five-year limitation is indicated in the Reviser's Note to 18 U. S. C. (Supp. V) § 3282 which says:

> "In the consolidation of these sections the 5-year period of limitation for violations of the Nationality Code, provided for in said section 746 (g) of title 8, U. S. C., 1940 ed., Aliens and Nationality, is reduced to 3 years. There seemed no sound basis for considering 3 years adequate in the case of heinous felonies and gross frauds against the United States but inadequate for misuse of a passport or false statement to a naturalization examiner."

To adopt the interpretation proposed by the Government would produce the situation that offenses committed in August, 1948, would be indictable until August, 1953, whereas like offenses committed in the following October, 1948, would not be indictable after October, 1951. The longer period for the prosecution of the earlier offenses has no relation to war conditions. Such a result is not to be inferred without a clear direction to that effect.

Finally, to interpret the words "rights or liabilities" in the saving clause as including such procedural incidents as the period within which indictments may be found

---

[24] In *United States* v. *Smith,* 342 U. S. 225, 226–227, n. 1, we assumed, without deciding, that this reservation had no effect on the running of a statute of limitations.

would overlook the practice of Congress to specify the saving of such limitations expressly when and if Congress wished them to be "saved." In the Revised Statutes of 1874, § 5598 preserved "All offenses committed, and all penalties or forfeitures" but, nevertheless, § 5599 was inserted to add "All acts of limitation, whether applicable to civil causes and proceedings, or to the prosecution of offenses, or for the recovery of penalties or forfeitures . . . ." [25] The 1909 Criminal Code contained similar provisions in §§ 343 and 344. 35 Stat. 1159. In 1933, when the Revised Statutes were reexamined and obsolete sections (including § 5598) were repealed, § 5599 was retained. 47 Stat. 1431. The reason then given for its retention was that the survival clause in the general repealing statute, 47 Stat. 1431, referred "only to 'rights' and 'liabilities' and not to remedies, recourse to which may be barred by limitation." S. Rep. No. 1205, 72d Cong., 2d Sess. 3. See *Campbell* v. *Holt*, 115 U. S. 620.

As the general three-year statute of limitations is applicable to each of the offenses charged and has been neither suspended by the Wartime Suspension of Limitations Act, nor made inapplicable by § 21 of the Act of June 25, 1948, the indictment in this proceeding came too late to be effective. The motion to dismiss it should

---

[25] See also, the general saving clause that was in the Revised Statutes but has been regarded as not applicable to matters of remedy and procedure:

"Sec. 13. The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

See 1 U. S. C. (Supp. V) § 109; *Hallowell* v. *Commons*, 239 U. S. 506; *Hertz* v. *Woodman*, 218 U. S. 205, 218; *Great Northern R. Co.* v. *United States*, 208 U. S. 452.

have been granted when first made. The judgment of the Court of Appeals, accordingly, is reversed and the cause is remanded to the District Court with direction to dismiss the indictment.

*Reversed and remanded.*

MR. JUSTICE JACKSON and MR. JUSTICE CLARK took no part in the consideration or decision of this case.

MR. JUSTICE REED, with whom THE CHIEF JUSTICE and MR. JUSTICE MINTON join, dissenting.

The limitation for prosecutions under the second clause of 18 U. S. C. § 371, conspiracy to defraud the United States, formerly fixed at three years by 18 U. S. C. § 3282, limitation for offenses not capital, is suspended for us by the Wartime Suspension of Limitations Act, 18 U. S. C. § 3287. The Code sections so far as applicable appear below.[1] As stated in the Court's opinion, the indictment

---

[1] 18 U. S. C. § 371:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

*Id.,* § 3282:

"Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within three years next after such offense shall have been committed."

*Id.,* § 3287:

"When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, . . . shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress."

under § 371 was brought more than three years after the alleged offense but within time if the wartime suspension applies. The applicability of that section, § 3287, depends upon whether the conspiracy charged in the indictment was an offense "involving fraud . . . against the United States . . . in any manner, whether by conspiracy or not," within the meaning of said § 3287.

An indictment under § 371 may be found for conspiracy to commit any offense against the United States, or to defraud the United States. These are alternative, disjunctive provisions. One addresses itself to the conspiracy to commit substantive offenses specified under other statutes; the other to a conspiracy to defraud the United States. Such a conspiracy is itself the substantive offense charged in the indictment. This construction has been accepted by the courts without variation.[2]

The indictment, Count I, charges conspiracy "to defraud the United States by impairing, obstructing and defeating the proper administration of its naturalization laws" by causing Bridges falsely and fraudulently to state that he "had never belonged to the Communist Party in the United States." We think that this alleged offense, since it is an effort to defraud the United States by impairing or obstructing or defeating its naturalization laws, obviously falls within the terms of the suspension of limitations, § 3287, "involving fraud" "by conspiracy."

We see nothing in the legislative history of § 3287 to raise a question as to its applicability to this indictment. The opinion of the Court quotes excerpts from reports concerning the need of suspension of limitation following the First World War. A statute was then passed, which

---

[2] *Falter* v. *United States,* 23 F. 2d 420, 423–424; *Miller* v. *United States,* 24 F. 2d 353, 360; *United States* v. *Holt,* 108 F. 2d 365, 368. Cf. *United States* v. *Manton,* 107 F. 2d 834, 838–839, a case in which two Justices of this Court sat as Circuit Justices.

we accept as having been enacted for the same purpose and with the same coverage as the present legislation. See n. 15 of the Court's opinion. Those reports do show that war frauds of a pecuniary nature were uppermost in the minds of Congress. Court's opinion, n. 17. This was only natural in view of the haste and waste of war but it does not follow logically that frauds against the proper exercise of governmental functions are excluded. The cited excerpts do not specifically exclude them. Certainly frauds impairing, obstructing or defeating selective service,[3] alien property,[4] administration of prices and wages[5] and the allotment of scarce material,[6] as well as the Immigration and Nationality Acts, would hardly be omitted knowingly by Congress from a suspension of limitation for frauds against the Government. Yet, many of these would fall under the Court's interpretation that wartime suspension applies only to war frauds of a pecuniary nature or of a nature concerning property. It was as hard, perhaps harder, to find and punish frauds against administration as those of a pecuniary or property nature. A general amnesty bill against war frauds would be fairer than to hold only those guilty of financial frauds. Both the purpose and the language of the Suspension Act lead to the conclusion that frauds against administration are within its scope.

The Court asserts that the Wartime Suspension Act should be limited to those frauds of a pecuniary or property nature because the Act is an exception to a "long-standing congressional 'policy of repose.'" Of course,

---

[3] Selective Service Act of 1948, 62 Stat. 604, 50 U. S. C. App. §§ 321, 451–470, 1001–1017.

[4] Trading With the Enemy Act, 40 Stat. 411, as amended, 55 Stat. 839, 50 U. S. C. App. § 1 *et seq.*

[5] Defense Production Act of 1950, 64 Stat. 798, as amended, 65 Stat. 131, 66 Stat. 298, 50 U. S. C. App. § 2061 *et seq.*, §§ 2101–2110.

[6] *Ibid.*, §§ 1912, 2072, 2073.

statutes of limitation are statutes of repose. But our public policy is fixed by Congress, not by the courts.[7] The public policy on repose for wartime frauds is fixed by the Suspension Act and it is the words of that Act that determine our policy, not some general feeling that litigation over frauds should end.

Nor can we accept the Court's reliance on *Marzani* v. *United States*, 83 U. S. App. D. C. 78, 82, 168 F. 2d 133, 137, as a sound precedent for construing the Wartime Suspension of Limitations Act to apply only to frauds of a pecuniary or property nature. On review this Court was evenly divided. The Court of Appeals held that the Wartime Suspension Act did not apply because "[t]he Supreme Court has clearly said (1) that a statute identical in pertinent part with the Suspension Act does not apply to offenses of which defrauding the United States in a pecuniary way is not an essential ingredient; and (2) that such defrauding of the United States is not an essential ingredient of offenses under the False Claims statute." 83 U. S. App. D. C., at 81, 168 F. 2d, at 136. Marzani was indicted under the False Claims Act.[8]

The cases relied upon for the first point are *United States* v. *Noveck*, 271 U. S. 201; *United States* v. *McElvain*, 272 U. S. 633; and *United States* v. *Scharton*, 285 U. S. 518. Noveck's case held that an indictment for perjury in an income tax return was barred, despite a suspension statute much like § 3287, because fraud was not an element of the crime of perjury. McElvain's case held similarly as to the substantive offense of a willful attempt to evade a tax. Scharton's case followed Noveck's and held that fraud on the United States was not an ingredient of evading a tax by false statements.

---

[7] *Hurd* v. *Hodge*, 334 U. S. 24, 34–35.

[8] 18 U. S. C. (1946 ed.) § 80, substantially reenacted, 18 U. S. C. § 287.

Under the second point, the Court of Appeals relied upon *United States* v. *Gilliland,* 312 U. S. 86. There this Court held that the 1934 Amendment to Criminal Code § 35, 48 Stat. 996, enlarged § 35 so as to include false representations in any documents "within the jurisdiction of any department or agency of the United States." 312 U. S., at 90. Thus the former holding of this Court that the False Claims Act was restricted to "pecuniary or property loss," *United States* v. *Cohn,* 270 U. S. 339, 346, 347, was made inapplicable to the section as amended. The Court of Appeals, however, thought that the *Gilliland* decision meant that defrauding the United States in a financial sense is not an essential ingredient under the False Claims Act. Therefore the Suspension Act did not apply. Cf. *United States* v. *Gottfried,* 165 F. 2d 360, 367. It is immaterial whether the Court of Appeals was correct in thinking that defrauding the United States in a financial sense was not an essential ingredient of the False Claims Act. We think it clear that defrauding the United States is an essential ingredient of this charge of conspiracy under § 371. We do not think *Marzani* adds strength to the Court's position that the Suspension Act applies only to financial fraud.

The cases both under the first and second points of the *Marzani* decision deal with the suspension statutes as applied to substantive crimes that did not require proof of fraud against the United States for conviction. It was enough that the charge and proof showed perjury, false swearing or misrepresentation to a government agency. Fraud was not an essential ingredient. The contrary is true in the present prosecution under Count I.

As we showed in the second paragraph of this opinion, the substantive crime here charged is the conspiracy to defraud the United States, punishable as a conspiracy. The fraud is an essential element. There can be no doubt that this crime, denounced by § 371, covers nonpecuniary

or nonproperty frauds. This has been true since *Haas* v. *Henkel*, 216 U. S. 462, 479.[9] We do not agree with the Court's analysis of the indictment that the offenses charged in Count I are "knowingly making a false statement" in a naturalization proceeding or aiding to obtain a certificate of naturalization by fraud. These are the overt acts of the Count I conspiracy, not the substantive offense of defrauding the Government in its administrative processes charged in Count I.

As Count I describes the substantive offense of conspiracy to defraud the United States, we do not agree with the Court's statement that:

> "The use in Count I of language copied from the second clause of the conspiracy statute merely cloaks a factual charge of conspiring to cause, or knowingly to aid, Bridges to make a false statement under oath in his naturalization proceeding, or to obtain by false statements a Certificate of Naturalization to which he was not entitled."

To prove the substantive offense of conspiracy under § 371 it is necessary to prove the fraud. It cannot be said that a false statement as to Communist membership in a naturalization hearing would not be a fraud against the administration of the naturalization laws within the language of *Haas* v. *Henkel, supra,* of "impairing, obstructing or defeating the lawful function of any department of Government." P. 479.

We therefore would affirm the judgment below as to Count I. Petitioners have also contended here that the conviction is barred because the principles of *res judicata* or collateral estoppel require us to hold that Bridges' nonmembership during the crucial period has been judi-

---

[9] See also *United States* v. *Cohn*, 270 U. S. 339, 346; *Hammerschmidt* v. *United States*, 265 U. S. 182, 188; cf. *United States* v. *Lepowitch,* 318 U. S. 702.

cially determined. They point to the Landis proceedings of 1938, referred to in *Bridges* v. *Wixon,* 326 U. S. 135, 138, this Court's decision in that case, and the naturalization proceedings themselves of 1945. None of these, though, are *res judicata,* since this is a criminal cause. Nor can collateral estoppel be invoked. There has been no court holding that Bridges has not been a Communist. The Landis determination of then nonmembership was not a judicial one. *Pearson* v. *Williams,* 202 U. S. 281. In *Bridges* v. *Wixon, supra,* no holding on the factual question of membership was reached. And the naturalization proceedings did not determine nonmembership, because Bridges could legally have been granted citizenship even had he been found by the Court to have been a member of the Communist Party. See 8 U. S. C. (1946 ed.) §§ 705, 707, which merely prohibited grant of naturalization to members of organizations advocating the overthrow of the Government, or to those not attached to the Constitution. This has been changed. 8 U. S. C. A. § 1424 (a)(2). There is no necessary identity in law between Communist Party members and such persons. See *Schneiderman* v. *United States,* 320 U. S. 118. Cf. *Carlson* v. *Landon,* 342 U. S. 524, 536, n. 22.

As our views have not prevailed as to Count I, we forbear to express any views as to Counts II and III.