UNITED STATES v. BRIDGES.

No. 28876.

United States District Court,
N. D. California, S. D.

Aug. 12, 1954.

Lloyd H. Burke, U. S. Atty., Lynn J. Gillard, Chief Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Gladstein, Andersen & Leonard, San Francisco, Cal., Telford Taylor, Washington, D. C., for defendant.

HAMLIN, District Judge.

This is an action instituted by the United States against Harry Renton Bridges. The complaint seeks to cancel a decree of naturalization obtained by Bridges in 1945, on the grounds (1) that Bridges illegally procured a decree and certificate of naturalization in that in the period of ten years preceding the filing of his petition for naturalization he had been, and at the time of his naturalization he was, a member of and affiliated with an organization which advised and taught the overthrow by violence of the government of the United States and that Bridges believed in and supported the principles of said organization (the Communist Party), and (2) that said decree and certificate of naturalization were fraudulently procured in that Bridges concealed his alleged membership in the Communist Party from the Court hearing the naturalization petition by falsely representing to said Court that he had not been affiliated with and had not been a member of said organization at any time.

On the same day this petition was filed (May 25, 1949), the Grand Jury indicted Bridges for (1) conspiring with others to secure Bridges' naturalization by fraudulently representing that he had never belonged to the Communist Party of the United States and (2) for having fraudulently made, contrary to law, a false statement under oath in his naturalization proceedings. On September 24, 1949, Bridges filed a motion to dismiss this civil action. On October 12, 1949, all proceedings in the civil action were stayed by order of court pending the outcome of the criminal action. On June 15, 1953, the criminal case was finally disposed of when the United States Supreme Court reversed the conviction obtained in the case on the grounds that the action was barred by the statute of limitations. Bridges v. United States, 1953, 346 U.S.

209, 73 S.Ct. 1055, 97 L.Ed. 1557. Subsequent to this reversal, an amendment to the motion to dismiss and a motion to strike were made by Bridges, and those, together with the original motion to dismiss, were placed on the calendar for hearing.

In these motions, Bridges makes three principal contentions: (1) That the question of whether or not he has been a member of the Communist Party has been litigated between these same parties and determined in his, Bridges', favor and is *res judicata;* (2) That the complaint does not properly charge Bridges with having "illegally procured the certificate of naturalization"; and (3) That the prosecution of the present proceeding is a violation of due process of law to Bridges.

In order to understand these contentions, a history of the proceedings between the United States and Bridges may be helpful.

In 1939 a deportation hearing was had in which it was charged that Bridges was at that time, as well as previously, a member of an organization that advocated the overthrow of the government by violence. 8 U.S.C.A. § 137(c),[1] as it read then, excluded aliens "who are members of or affiliated with any organization * * * that * * * advocates * * * the overthrow by force or violence of the Government * * *." A hearing was held before James M. Landis in which he concluded that the evidence failed to establish that Bridges was at that time a member of or affiliated with the Communist Party. This was affirmed by the Secretary of Labor in January of 1940. (Hereafter, this will be referred to as the Landis-Perkins proceedings.)

After an amendment in the law a second deportation hearing was held in 1941 at which the Honorable Charles B. Sears was the hearing officer. The finding was that the Communist Party was an organization of the kind described in the statute, that the Marine Workers' Industrial Union was affiliated with the Communist Party and was an organization of the same character, and that Bridges had been affiliated with both organizations and had been a member of the Communist Party. This finding was reversed by the Board of Immigration Appeals which in turn was reversed by the Attorney General. Bridges was taken into custody and sought habeas corpus. This was denied, Ex parte Bridges, D.C., 49 F.Supp. 292. The Circuit Court affirmed in 9 Cir., 144 F.2d 927. In Bridges v. Wixon, 1945, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103, the two lower courts were reversed by the United States Supreme Court. The majority held that the hearing officer erroneously interpreted "affiliation" and that the hearing was unfair on the question of Bridges' membership in the Communist Party. (Hereafter referred to as the Sears-Wixon proceedings.)

Shortly thereafter, Bridges sought and received a decree of naturalization on September 17, 1945, from the Superior Court of the State of California in and for the City and County of San Francisco. The United States appeared therein, but did not contest this decree.

In 1949 the above mentioned criminal proceedings were brought against Bridges in this court. Bridges was convicted by a jury in April, 1950. The conviction was affirmed by the Circuit Court. Bridges v. United States, 9 Cir., 1952, 199 F.2d 811. Thereafter, the conviction was reversed by the Supreme Court in Bridges v. United States, 1953, 346 U.S. 209, 73 S.Ct. 1055, on the grounds that the statute of limitations had run on the action. (Hereafter referred to as the criminal proceedings.)

This action was then activated, the amendment to the motion to dismiss and the motion to strike were filed, and the motions were set for hearing. Briefs were filed and the case was argued at length.

Bridges' first contention is that his membership in or affiliation with the Communist Party has been determined

1. Now 8 U.S.C.A. § 1182.

adversely to the Government by the Landis-Perkins hearing and that that administrative hearing is *res judicata* of this issue as of the date of that hearing. The same contention was made in the criminal proceedings and determined adversely to Bridges. The Circuit Court said at 199 F.2d at page 826 that "the proceedings do not act as an estoppel to, nor *res judicata* of, the prosecutions in the present action, * * *."

 Bridges' second contention is that the Sears-Wixon proceedings determined this same issue in his favor and that this likewise is *res judicata* of that issue as of 1941, the date of the Sears decision. The Ninth Circuit Court in the criminal proceedings, however, likewise determined this issue contrary to Bridges' contention. That court said 199 F.2d at page 827 "As for the administrative hearing, it would not be *res judicata* for the same reasons as assigned to the 1938 (sic) hearing before Dean Landis" and "we have reached the conclusion that Bridges v. Wixon, supra, did not decide that Bridges had never been a Communist * * * [and] is not *res judicata* to the case here on appeal."

The Supreme Court in reversing the lower courts in the criminal proceedings did not pass on Bridges' first two contentions. However, in the dissent it was stated [346 U.S. 209, 73 S.Ct. 1068] "None of these, though, are *res judicata*, since this is a criminal cause. Nor can collateral estoppel be invoked. There has been no court holding that Bridges has not been a Communist. The Landis determination of then nonmembership was not a judicial one. Pearson v. Williams, 202 U.S. 281, 26 S.Ct. 608, 50 L.Ed. 1029. In Bridges v. Wixon, supra, no holding on the factual question of membership was reached."

 Bridges' third contention is that the Naturalization Court's decree grant-

ing citizenship is *res judicata* of this issue. The contention is that the statute [2] permitting upset of such judgments for illegality or fraud is merely declaratory of existing law and that under existing law this judgment cannot be upset in the manner in which the Government is now trying to do. The many cases cited that permit the setting aside of naturalization judgments are said to be because the court did not have jurisdiction in that one of the jurisdictional procedural steps were not taken.

However, in Knauer v. United States, 1946, 328 U.S. 654, 66 S.Ct. 1304, 1306, 90 L.Ed. 1500, the action was similar to the present action. The contention was that Knauer took a false oath when he swore allegiance and thus obtained his citizenship by fraud, and this was held to be grounds for denaturalization. The Court said "fraud connotes perjury, falsification, concealment, misrepresentation." It does not appear that the United States took any part in the naturalization proceedings. The Court held that the naturalization judgment was not *res judicata*.

In Maney v. United States, 1928, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156, a certificate of naturalization was granted in a contested case. At the time of the filing of the petition there was no certificate on file from the Department of Labor stating the date, place, and manner of arrival in the United States, and the declaration of intention of such petitioner which the Act required. The naturalization court permitted the filing of the missing certificate *nunc pro tunc*, as of the date when the petition was filed. The United States did not appeal, but instead, filed an action under Section 15 of the Naturalization Act, 8 U.S.C. § 738 of the 1940 Act, charging that the naturalization decree was "illegally obtained." The Supreme Court held that the prior judg-

---

2. 8 U.S.C. § 738(a) of the 1940 Act provides:

"It shall be the duty of the United States district attorneys * * * to institute proceedings * * * for the purpose of revoking and setting aside the order admitting [a] person to citizenship and canceling the certificate of naturalization on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured." Now 8 U.S.C.A. § 1451(a).

ment was not *res judicata* and permitting the setting aside of the former judgment of naturalization.

United States v. Ness, 1917, 245 U.S. 319, 38 S.Ct. 118, 62 L.Ed. 321, is a similar case where the United States contested the naturalization and then sought to have it revoked in an equity action. The Court held that the naturalization was illegally procured because of failure to file a certificate of arrival and that the naturalization judgment, in which this very point was litigated, was not *res judicata*.

Bridges' attempts to distinguish the Maney and Ness cases on the grounds the certificate from the Department of Labor and the certificate of arrival were jurisdictional facts and that where a court does not have jurisdiction even a finding by the court to that effect is not binding. This is also true in this case. The Act, 8 U.S.C.A. § 705, Act of 1940 [3] provides that "No person shall hereafter be naturalized as a citizen of the United States * * * (b) Who believes in, advises, advocates, or teaches, or who is a member of or affiliated with any organization * * * that believes in, advises, advocates, or teaches—(1) the overthrow by force or violence of the Government of the United States * * *."

That the "fraud" by which a naturalization decree may be set aside is different from the "fraud" by which other judgments may be set aside is evidenced from the case of United States v. Siegel, 2 Cir., 1945, 152 F.2d 614, 615, wherein it was said "the statutory authorization to revoke a judgment of naturalization procured by fraud is valid, whether the fraud be intrinsic or extrinsic." See also United States v. Hauck, 2 Cir., 1946, 155 F.2d 141. Also in the Ness case, supra, the Court said, 245 U.S. at page 325, 38 S.Ct. at page 121, "The remedy afforded by Section 15 [8 U.S.C.A. § 738 of the 1940 Act] for setting aside certificates of naturalization is broader than that afforded in equity, independently of statute, to set aside judgments".

Bridges' fourth and last contention on *res judicata* and estoppel is based on the criminal proceedings. His contention is that the decision that the proceedings were barred by the statute of limitations is a decision on the merits, citing United States v. Oppenheim, 1916, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161, and that this therefore precludes this civil action. The case of Sourino v. United States, 5 Cir., 1936, 86 F.2d 309, 310, is directly to the contrary. A criminal action was brought against Sourino charging him with fraudulent procurement of his naturalization. A verdict of acquittal was directed by the Court because the prosecution was barred by the statute of limitations. Thereafter, a civil proceeding was instituted by the Government to cancel the certificate of naturalization on the grounds that it had been illegally and fraudulently procured, pursuant to 8 U.S.C. § 405, 8 U.S.C. § 738 of the 1940 Act. The Court said:

"This proceeding to cancel appellant's certificate of naturalization is not the same cause of action as the prosecution by indictment referred to, but is an additional remedy for correcting an error in the original proceeding granted naturalization. It was 'designed to afford cumulative protection against fraudulent or illegal naturalization.' (Cases cited.)

"The fact that naturalization may be revoked as an incident to conviction of fraudulent or illegal procurement thereof does not give the required identity to the two proceedings or to the things previously sought to be obtained by them; nor does it appear that any issue here in controversy was adjudicated in the criminal prosecution where the sole issue was the bar of the statute of limitations.

"It follows that the facts shown by this record do not sustain a plea either of res adjudicata or of estoppel by judgment. (Cases cited.)"

3. Now 8 U.S.C.A. § 1424.

■ Even where the issue is the same in a criminal proceeding and in a civil proceeding, the first is not *res judicata* of the second. Helvering v. Mitchell, 1938, 303 U.S. 376, 58 S.Ct. 630, 82 L.Ed. 917.

■ Bridges' second major contention goes to the sufficiency of the complaint. He says that the complaint charges illegality in obtaining the decree of naturalization in that during the period of ten years preceding the filing of the petition for naturalization and at the time of the filing of the petition, Bridges was a member of the Communist Party, and that in 1945 membership in the Communist Party in and of itself was not a bar to naturalization, citing Schneiderman v. United States, 1943, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796. There are two answers to this contention. First, all the Court said in the Schneiderman case was that there was not sufficient proof in 1927, the year when Schneiderman was naturalized, that the Communist Party was an organization within the meaning of the statute. That statement does not preclude proof that the same party in 1945, when Bridges was naturalized, was an organization of the type proscribed in the statute. Second, the complaint charges more than mere membership in the Communist Party. The charge is that Bridges was a member of and affiliated with an organization that advised, advocated, and taught the overthrow by force and violence of the Government of the United States, and that Bridges believed in and supported the principles of that organization. The complaint identifies the organization as the Communist Party.

■ Bridges' last major contention is that the many proceedings against him constitute harassment of an individual such as to violate the due process clause of the Fifth Amendment. The first deportation proceedings (Landis-Perkins), which concluded in Bridges' favor, surely was not a denial of due process. The second deportation hearing (Sears) was under a different statute and the issues there were different in that they embraced a different period of time (the statute was amended to make deportable an alien who was *at any time* after entry to the United States a member of the described organizations, rather than merely at the time of the hearing. 8 U.S.C. § 137(g) of the 1940 Act.[4] The habeas corpus action which came out of the Sears decision was instituted by Bridges and not by the Government.

The naturalization proceedings were initiated by Bridges himself and cannot be classified as harassment of Bridges by the Government.

The criminal proceedings grew out of the naturalization proceedings. This same contention was made in the criminal case, when there was one less proceeding against Bridges, and disposed of as being without merit by the Ninth Circuit in United States v. Bridges, 1952, 199 F.2d 811, 828. This further proceeding against Bridges, which also grew out of the naturalization proceedings, would not seem to alter the conclusion arrived at by the Circuit Court since the Supreme Court and other courts have held that the remedies in these cases are cumulative. United States v. Ness, supra; Sourino v. United States, supra.

After a careful consideration of all arguments advanced by the Government and by respondent Bridges, this Court is of the opinion that there is no legal bar to the prosecution of the present proceeding by the Government.

Accordingly, it is ordered that respondent's motion to dismiss, as amended, and motion to strike are denied.

4. Now 8 U.S.C.A. § 1251.