Marie Germaine Rose Anna BISAILLON, Appellant,

v.

William A. HOGAN, District Director Immigration and Naturalization Service, Honolulu, Appellee.

No. 15749.

United States Court of Appeals Ninth Circuit.

July 1, 1958.

Certiorari Denied Oct. 27, 1958.

Howard K. Hoddick, Honolulu, Hawaii, for appellant.

Louis B. Blissard, U. S. Atty., Charles B. Dwight, III, Asst. U. S. Atty., Honolulu, Hawaii, for appellee.

Before HEALY, POPE, and CHAMBERS, Circuit Judges.

HEALY, Circuit Judge.

Appellant, an alien, was ordered deported after proceedings before a special inquiry officer of the Immigration Service and an appeal of that officer's decision to the Board of Immigration Appeals. She then filed in the court below an action for declaratory judgment seeking review of the agency order. The court found and concluded that the determination of the Service was not erroneous, and that appellant had not been denied a fair hearing. Accordingly the proceeding for declaratory relief was dismissed, and this appeal followed.

Appellant was born in Montreal, Canada, and is a Canadian citizen. She first entered the United States for permanent residence in 1947, departed in 1950, and made her latest entry into this country the same year. She resides in Hawaii.

In October of 1955 she was tried and convicted of violation of 18 U.S.C. § 1542 and was sentenced to serve a term of 18 months. In December of the same year she was convicted of another and distinct offense against the same statute, and was fined only. This statute in material part reads as follows:

"Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce and secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws;

\* \* \* \* \* \*

"Shall be fined not more than $2,000 or imprisoned not more than five years, or both."

Specifically, the first of appellant's convictions under the statute was on the charge of making of a false statement in a passport application of one Florence Paquet to the effect that she was not related to Florence Paquet and that she knew her to be a citizen of the United States. Her second conviction was on the charge of making of a false statement in an application for a passport for herself, to the effect that she was born in Laurin, Montana.

While appellant was still in prison serving her sentence, deportation proceedings were commenced against her. She was charged with being deportable under 8 U.S.C.A. § 1251(a) (4) as one who

"(4) is convicted of a crime *involving moral turpitude* committed within five years after entry and \* \* \* sentenced to confinement \* \* \* for a year or more, or who at any time after entry is convicted of two crimes *involving moral turpitude*, not arising out of a single scheme \* \* \* regardless of whether confined \* \* \*." [Emphasis supplied.]

On appeal here appellant claims, among other things, that she was deprived of a fair hearing before the special inquiry officer in that she was not represented by counsel. The claim appears lacking in merit. At the outset appellant retained one Poston as her attorney. Poston had formerly been a district director of the Service for the District of Hawaii. Because of this the Service questioned his right to represent appellant, and the point was decided against him by the Board of Immigration Appeals. This ruling was made and communicated about March 17th of 1956. Poston applied for a rehearing of the ruling.

Appellant on March 20 following was informed by the Service that there would be a hearing of her case before the special inquiry officer on April 9th. When that date arrived she was not represented by counsel, nor had she heard from Mr. Poston whether or not he had gained a rehearing of his disqualification ruling.

When asked whether she would proceed without counsel or whether she desired a continuance to the following day to obtain one she replied that she was willing to proceed.

During the hearing on the 9th the government entered new charges, which appear merely to be a rewording of the original, and appellant was then given a continuance until April 13 to obtain counsel. She did not do so, and on the 13th she reluctantly consented to proceed. On the subsequent appeal to the Board of Immigration Appeals she was fully represented by counsel of her own choice.

Appellant was by no means an indigent person, nor was she a defendant in a criminal case. She had counsel of her own choosing, not only before the Board of Immigration Appeals, but before the district court and here. She could as readily have obtained counsel to represent her before the special inquiry officer.

 A second ground of claimed unfairness is that the transcript of the proceeding before the special inquiry officer indicates in a number of places that there were discussions "off the record," hence that the transcript does not truly reflect what transpired. Right to this off-the-record procedure is conferred on the hearing officer by statute (8 CFR 242.15). Moreover in the district court a witness who had been present testified as to the nature of the various off-the-record discussions that had taken place. They appear to have been innocuous so far as appellant was concerned.

 The remaining question in the case, and the only one presenting genuine difficulty, is whether violation of 18 U.S.C. § 1542 involves "moral turpitude" within the sense of 8 U.S.C.A. § 1251(a) (4), heretofore quoted. Appellant argues that it does not. The government's position is that moral turpitude is involved in that the statute requires for conviction proof of a false statement, knowingly and willfully made, with *in-tent* to obtain the issuance of a passport contrary to law. This conduct is said to be clearly a fraud on the United States though not measurable in dollars and cents. The offense, it is said, is akin to perjury, which latter offense is conceded by counsel for the appellant to be an offense involving moral turpitude.

As this court observed in Tseung Chu v. Cornell, 247 F.2d 929, there are a myriad of decisions sponsoring various concepts of "moral turpitude," offering no well-settled criteria. In that case the court cited and discussed numerous of the decisions bearing on the subject, and we shall not undertake again to plow that field at any length. Appellant's counsel argues that in determining whether moral turpitude is involved in a particular case one may look only at the statute, that is to say, one may not look at the indictment or judgment to see what the particular facts of the offense are. As we read Tseung Chu v. Cornell, supra, this view was there rejected.

Looking at the facts of the offenses of which appellant was convicted, her counsel argues that a non-violent crime, to involve moral turpitude, must contain the element of fraud. For this view counsel relies heavily on Bridges v. United States, 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557. There Bridges was charged with having made a statement at his naturalization hearing to the effect that he was not and never had been a Communist. Contending that the statement was false, the government prosecuted him under §346(a) (1) of the then naturalization act,[1] which declared it an offense "knowingly to make a false statement under oath, either orally or in writing, in any case, proceeding, or matter relating to * * * naturalization or citizenship."

In the Bridges case the normal statute of limitations pertaining to the offense charged was three years, and this time limit had passed. The government argued that a special wartime suspension

---

[1.] Now 18 U.S.C.A. § 1015.

of limitations statute was applicable. This statute extended the time limitation on offenses involving fraud in wartime against the government to three years after the end of the war. The Court held that the special suspension statute did not apply for two reasons: (1) that the statute covered only offenses where pecuniary fraud was involved, and, (2) the statute covered only offenses where fraud was a necessary element of the crime. The Court remarked (at page 222 of 346 U.S., at page 1062 of 73 S.Ct.) that "In that offense, as in the comparable offense of perjury, fraud is not an essential ingredient. The offense is complete without proof of fraud, although fraud often accompanies it."

It is significant (1) that in this observation the Court likened the offense to perjury, which concededly involves moral turpitude; and (2) that the statute we are concerned with here differs from the statute in Bridges in that the one before us requires the presence of the additional element of intent, namely, intent to induce the issuance of the passports under authority of the United States.

Affirmed.