## HOMER RAY STOKES, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 4247

December 14, 1960                    357 P.2d 851

(Petition for rehearing denied January 16, 1961.)

*Harry A. Busscher*, of Reno, for Appellant.

*Roger D. Foley*, Attorney General, and *Carl F. Martillaro*, District Attorney, for Respondent.

## OPINION

By the Court, BADT, J.:

This appeal calls for a construction of NRS 465.080 making it a gross misdemeanor to use various cheating devices in playing certain gambling games, slot machines, etc. The section in question, NRS 465.080, describes in the alternative a number of acts, each of which is declared to be unlawful. That part with which we are here concerned reads as follows: "It shall be unlawful for any person * * * to employ or have on his person any cheating device to facilitate cheating in such games or in playing any slot machine, lawful vending machine, coin box, telephone or other receptacle * * *." The entire section is printed in the margin[1]. It is apparent to us that the words used in the initial clause thereof, to wit, *"licensed gambling game"* are so detached

[1]"1. It shall be unlawful for any person playing any licensed gambling game to use bogus or counterfeit chips, or to substitute and use in any such game cards or dice that have been marked, loaded or tampered with, or employ or have on his person any cheating device to facilitate cheating in such games or in playing any slot machine, lawful vending machine, coin box, telephone or other receptacle designed to receive or be operated by lawful coin of the United States of America in furtherance of or in connection with the sale, use or enjoyment of property or service, to use other than lawful coin, legal tender of the United States of America, not of the same denomination as the coin intended to be used in such device, or to use or have on his person any cheating or thieving device to facilitate removing from any slot machine, lawful vending machine, coin box, telephone or other receptacle any part of the contents thereof."

from the alternative acts declared to be unlawful that the words we have italicized are not carried forward to the particular unlawful act that we have first quoted.

The information charged that appellant "did willfully and unlawfully use a cheating device, to wit, a metal instrument to facilitate cheating in playing slot machines, and did employ said cheating device in playing licensed slot machines, located in the Nevada Club, in Tahoe Township, Douglas County, State of Nevada."

It is apparent that the draftsman of the information chose, from the various other alternative acts declared by the section to be unlawful, a word here and there as a sort of embellishment. The surplusage may be disregarded. State v. Murray, 67 Nev. 131, 215 P.2d 265, 216 P.2d 606; Bridges v. United States, 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557; Vanderhorst v. State, 151 Fla. 620, 10 So.2d 138. Without such surplusage the offense described in the alternative above quoted is clearly charged.

4]

Appellant contends that NRS 465.080, however, must be read in connection with other sections; that under the section itself a conviction cannot be had without a showing that the cheating device was used on *licensed* slot machines; that the state recognized this in including it in the information; that other sections deal specifically with the nature of the licenses required; that although it is conceded that the state proved that the slot machines in question were duly licensed by the state and county, there was no proof that they were licensed by the federal government. We hold that these contentions are without merit.

It is conceded that appellant and one Richard Charlesworth were apprehended and placed under arrest for using a cheating device on slot machines at the Nevada Club and that appellant was in company with said Charlesworth and that a common plan or scheme existed

between them as far as Charlesworth's actions were concerned and that appellant became a principal to Charlesworth's use of a cheating device on slot machines. It is contended only that there was a fatal lack of proof of a federal license and that such license is specifically required under the provisions of NRS 463.160, making it unlawful for any person to operate any game or slot machine as theretofore defined "without having first procured, and thereafter maintaining in full force and effect, all federal, state, county and municipal gaming licenses as required by statute or ordinance or by the governing board of any incorporated city or town"; and that pursuant to the provisions of the Federal Internal Revenue Code every person maintaining a coin-operated gaming device must pay a special tax; that he is required to register with the collector of his district; that he may not be engaged in or carry on any trade or business thus described until he has paid a special tax therefor in the manner provided; that he must post in his establishment stamps denoting the payment of such special tax; and that these federal requirements existed prior to the enactment of NRS 465.080. Internal Revenue Code 1954, as amended. 26 U.S.C.A. secs. 4461, 4462, 4901, 6806, 7011.

In short, it is appellant's contention that nothing in the Nevada statute makes it unlawful to use a cheating device on an unlicensed slot machine, but only on a slot machine licensed by the state, county, local government, and federal government. We reject this contention also, so far as it applies to the particular act alternately described in the section as unlawful.

NRS 463.020 1(o) provides: " 'License' or 'gaming license' means any license issued by the state or any political subdivision thereof pursuant to this chapter * * *."

This would appear to be in conflict with NRS 463.160 above quoted if the federal tax may be considered a federal gaming license. It is clear, however, that the federal tax is not a license. It is operative in all states,

including not only Nevada, where gambling and the maintenance of slot machines are lawful, but in all states where such operations are unlawful. Appellant does not contend, nor could he logically contend, that the payment of the federal tax and the possession of the federal stamps evidencing such payment and proof of registration with the local director of internal revenue would or could authorize the maintenance of gambling or of slot machines in states declaring such operations unlawful. We therefore conclude that compliance with the federal requirements would not result in a gaming or slot machine "license" from the federal government, and that it was not necessary for the state to charge or prove the same.

The point discussed is included in appellant's assignments of error with reference to instructions given, instructions refused, denial of motion for instructed verdict, and rulings on evidence, but they all apply to the same contention.

The judgment and order denying motion for new trial are affirmed.

McNAMEE, C. J., and PIKE, J., concur.